JOSEPH N. VERROCHI & another,[1] trustees, *vs.*
COMMONWEALTH.

Suffolk. November 5, 1984. — April 24, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & LYNCH, JJ.

*Statute,* Construction, Retroactivity. *Interest. Eminent Domain,* Interest.
*Constitutional Law,* Eminent domain.

Where a taking of land by the Commonwealth occurred prior to the April 13,
1982, effective date of St. 1981, c. 800, § 3, amending G. L. c. 79,
§ 37, and a verdict for damages for the taking was rendered after that
date, the award was governed by the amendment and thus bore interest
at the rate of ten percent a year from the date of the taking. [638-643]

PETITION filed in the Superior Court on June 19, 1974.

The case was tried before *Paul K. Connolly,* J., and a motion
regarding the calculation of interest was heard by him.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*George A. McLaughlin, Jr. (Theodore E. Daiber* with him)
for the plaintiffs.

*Elizabeth Bowen Donovan,* Assistant Attorney General, for
the Commonwealth.

LIACOS, J. In 1981 the Legislature amended G. L. c. 79,
§ 37, by St. 1981, c. 800, § 3 (1981 amendment), to provide
that damages assessed in land taking actions under the eminent
domain statute, G. L. c. 79, §§ 1-45, shall bear interest at the
rate of 10% a year from the date as of which they are assessed
until paid.[2] Prior to the passage of this 1981 amendment, G. L.

---

[1] Michael J. Verrochi.

[2] General Laws c. 79, § 37, as appearing in St. 1981, c. 800, § 3, states:
"Damages under this chapter shall bear interest at the rate of ten per cent
per annum from the date as of which they are assessed until paid, except
that an award shall not bear interest after it is payable unless the body politic

c. 79, § 37, as amended through St. 1973, c. 983, §§ 2, 3, provided that interest be paid at the rate of 6% a year.[3]

The relevant facts of this case are simple and undisputed. By order of taking, dated September 19, 1973, and recorded October 18, 1973, the Commonwealth took by eminent domain a large parcel of land situated in the Neponset section of the city of Boston and owned by the plaintiffs, Joseph N. and Michael J. Verrochi, trustees of the Verrochi Realty Trust. The Commonwealth made a pro tanto payment of $1,330,000 to the plaintiffs under G. L. c. 79, § 8A. On June 19, 1974, the plaintiffs filed a petition for assessment of damages under

---

or corporate liable therefor fails upon demand to pay the same to the person entitled thereto. Interest shall be added by the clerk of the court to the damages expressed in a verdict, finding, or order for judgment. A judgment, whether against the commonwealth or any other body politic or corporate, shall bear interest at the rate of ten per cent per annum from the date of the entry of such judgment to and including the last day of the month prior to the month in which such judgment is satisfied, except that a judgment against the commonwealth shall not bear interest if it is satisfied within thirty days of such entry."

[3] In 1963, the Legislature amended G. L. c. 79, § 37, to increase the rate of interest payable on damages assessed in land takings from 4% a year to 6% a year. St. 1963, c. 793, § 1. In 1964, the Legislature again amended G. L. c. 79, § 37, to provide for postjudgment interest, but this amendment did not affect the rate of interest payable, which remained at 6% a year. St. 1964, c. 548, §§ 2, 5. The statute was amended again in 1965 in a way not pertinent here. St. 1965, c. 653, § 1. The next amendment to G. L. c. 79, § 37 (which also did not change the rate of interest), was not until 1973. St. 1973, c. 983, §§ 2, 3. Thus the version of G. L. c. 79, § 37, in effect prior to the 1981 amendment was as amended through St. 1973, c. 983, §§ 2, 3, and provided: "Damages under this chapter shall bear interest at the rate of six per cent per annum from the date as of which they are assessed until paid, except that an award shall not bear interest after it is payable unless the body politic or corporate liable therefor fails upon demand to pay the same to the person entitled thereto. Interest shall be added by the clerk of the court to the damages expressed in a verdict, finding, or order for judgment. A judgment, whether against the commonwealth or any other body politic or corporate, shall bear interest at the rate of six per cent per annum from the date of the entry of such judgment to and including the last day of the month prior to the month in which such judgment is satisfied, except that a judgment against the commonwealth shall not bear interest if it is satisfied within thirty days of such entry. In case of trial by jury, the date of entry of judgment refers to judgment in the trial de novo."

G. L. c. 79, § 14. On June 23, 1983, a jury returned a verdict of $3,000,000 for the plaintiffs. On the same day, after the jury returned the verdict, the plaintiffs filed a motion regarding calculation of interest on the verdict. In their motion, the plaintiffs requested the court to award them interest at the rate of 10% a year under St. 1981, c. 800, § 3, from the date of the taking to the entry of judgment. After a hearing, the judge denied the plaintiffs' motion. He ordered that interest be awarded at the rate of 6% a year from the date of the taking until the effective date of the 1981 amendment, April 13, 1982, and at 10% a year thereafter. The plaintiffs appealed the judge's order.[4] We transferred the appeal from the Appeals Court to this court on our own motion.

The plaintiffs make two arguments on appeal. First, they contend that, by virtue of the 1981 amendment, they should receive interest at the rate of 10% a year from the date of the taking, even though the taking preceded the effective date of the 1981 amendment by nearly nine years. Second, they argue that, if the 1981 amendment is not applicable, and if they are awarded interest at the rate of 6% a year from the date of the taking until the effective date of the 1981 amendment, they will be denied just or reasonable compensation for their property in violation of both the Federal and State Constitutions. We conclude that the 1981 amendment applies to this taking. We consider the constitutional claim only to the extent necessary for proper construction of the legislative intent in enacting the 1981 amendment.

The trial judge, relying primarily on *Porter* v. *Clerk of the Superior Court,* 368 Mass. 116 (1975), ruled that the higher rate mandated by the 1981 amendment went into effect only as of the effective date of the 1981 amendment. Thus, he ordered that the plaintiffs be awarded interest at 6% a year

---

[4] The plaintiffs also appealed the judgment on the jury verdict of damages. However, their arguments on appeal concern exclusively the denial of their postjudgment motion for interest at the rate of 10% a year. Thus, we do not consider, because the plaintiffs have not argued, any issues concerning the propriety of the judgment on the jury verdict of damages. Mass. R. A. P. 16(a) (4), as amended, 367 Mass. 919 (1975).

until the effective date of the 1981 amendment, and at 10% a year thereafter.

The trial judge's reliance on *Porter* v. *Clerk of the Superior Court, supra,* was misplaced. *Porter* involved the retroactivity of G. L. c. 231, § 6B, as amended by St. 1974, c. 224, § 1 (1974 amendment), which provided that damages in tort cases shall bear interest at the rate of 8% a year.[5] Before the 1974 amendment, which set the rate at 8% a year, G. L. c. 231, § 6B, as appearing in St. 1973, c. 1114, § 155, had provided for interest on tort damages but had not specified the rate of interest.[6] We held that the 1974 amendment to G. L. c. 231, § 6B, had a limited retroactive effect. We ruled that the plaintiff was entitled to interest at the rate of 8% a year only from the effective date of the 1974 amendment. Despite the superficial similarity of *Porter* and the present case, *Porter* is inapposite. The statute construed in *Porter* concerned interest on damages awarded in tort cases, a matter of legislative grace; the statute under consideration in the present case involves interest on damages assessed in eminent domain cases, a matter of constitutional right.

Persons whose property is taken for public use by a governmental entity are constitutionally entitled to just or reasonable compensation for their property. U.S. Const. amend V. Art. 10 of the Massachusetts Declaration of Rights.[7] When there

---

[5] General Laws c. 231, § 6B, as amended by St. 1974, c. 224, § 1, provided: "In any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damage to property, there shall be added by the clerk of the court to the amount of damages interest thereon at the rate of eight per cent per annum from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law."

[6] The language of G. L. c. 231, § 6B, as appearing in St. 1973, c. 1114, § 155, was identical to that in G. L. c. 231, § 6B, as amended by St. 1974, c. 224, § 1, except that the following words were absent: "at the rate of eight per cent per annum."

[7] The Fifth Amendment to the Constitution of the United States provides, inter alia, that "nor shall private property be taken for public use, without just compensation." This "prohibition . . . applies against the States through the Fourteenth Amendment." *Webb's Fabulous Pharmacies, Inc.* v.

is a delay between the taking and the payment of compensation, persons are constitutionally entitled to interest on the damages for the period of delay as part of the just compensation due them. *Seaboard Air Line Ry.* v. *United States,* 261 U.S. 299, 306 (1923). *Woodworth* v. *Commonwealth,* 353 Mass. 229, 232 (1967). We recognized this principle long ago when Chief Justice Shaw stated: "The true rule would be, as in the case of other purchases, that the price is due and ought to be paid, at the moment the purchase is made, when credit is not specially agreed on. And if a pie-powder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand, whilst they apply the axe with the other; and this rule is departed from only because some time is necessary, by the forms of law, to conduct the inquiry; and this delay must be compensated by interest. But in other respects the damages must be appraised upon the same rule as they would have been on the day of the taking." *Parks* v. *Boston,* 15 Pick. 198, 208-209 (1834). See, to the same effect, *Kirby Forest Indus., Inc.* v. *United States,* 467 U.S. 1, 10-11 (1984); *Seaboard Air Line Ry.* v. *United States, supra* at 305-306; *United States* v. *Rogers,* 255 U.S. 163, 169 (1921); *Miller* v. *United States,* 620 F.2d 812, 837 (Ct. Cl. 1980); *United States* v. *Blankinship,* 543 F.2d 1272, 1275 (9th Cir. 1976). "Where the United States [or any governmental entity] condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added." *Seaboard Air Line Ry.* v. *United States,*

*Beckwith,* 449 U.S. 155, 160 (1980). *Chicago, Burlington & Quincy R.R.* v. *Chicago,* 166 U.S. 226, 239, 241 (1897). Article 10 of the Declaration or Rights of the Massachusetts Constitution provides, inter alia: "And whenever the public exigencies require, that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor." "[T]he Commonwealth's Constitution affords protection parallel to that of the United States . . . ." *Bromfield* v. *Treasurer & Receiver Gen.,* 390 Mass. 665, 668 (1983).

*supra* at 306. Furthermore, because interest at a "proper rate" is an element of just compensation, the determination of the proper rate of interest is ultimately a judicial function. *Miller* v. *United States, supra.* See *Monongahela Navigation Co.* v. *United States,* 148 U.S. 312, 327 (1893) ("The Constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry").

In construing the retroactivity of the 1981 amendment to G. L. c. 79, § 37, therefore, we must be especially mindful of two rules of statutory construction. First, the Legislature is presumed to be aware of constitutional requirements. *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n,* 385 Mass. 70, 80 (1982). Second, the Legislature's enactments ordinarily carry a heavy presumption of constitutionality. *Commonwealth* v. *Franklin Fruit Co.,* 388 Mass. 228, 235 (1983). *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 851 (1977). Further, we must construe a statute so as to avoid "constitutional difficulties, if reasonable principles of interpretation permit it." *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n, supra* at 79. Thus, we must examine the 1981 amendment in light of a presumed legislative intent to meet the constitutional requirement of just or reasonable compensation. In *Porter* v. *Clerk of the Superior Court,* 368 Mass. 116 (1975), by contrast, there were no similar constitutional considerations. *Porter,* therefore, does not set precedent for the present case.

In examining the 1981 amendment, we start with the "general rule [that] statutes operate prospectively unless a contrary legislative intent is clearly shown." *Nantucket Conservation Found., Inc.* v. *Russell Management, Inc.,* 380 Mass. 212, 214 (1980). In discerning legislative intent, we look first to the words of the statute. *Id.* Statute 1981, c. 800, § 3, states in pertinent part: "Damages under this chapter shall bear interest at the rate of ten per cent per annum from the date as of which they are assessed until paid . . . ." There is no dispute that the "date as of which [damages] are assessed" is "the date of the taking." *Barnes* v. *Peck,* 283 Mass. 618, 628 (1933). Thus, the amendment states simply that damages assessed in land

taking actions shall bear interest at 10% a year from the date of the taking. It is silent on when this new rate was to go into effect.

We must therefore proceed beyond the words of the statute to discern the legislative intent. The intent of the Legislature "is to be ascertained in the light of certain matters of general legislative and judicial knowledge." *Central Trust Co.* v. *Howard,* 275 Mass. 153, 155 (1931). Against this background we must consider, inter alia, "the evil or mischief toward which the statute was apparently directed" and "the main object sought to be accomplished by the enactment." *Meunier's Case,* 319 Mass. 421, 423 (1946).

In the late 1970's, and early 1980's, numerous courts held that an interest rate of 6% a year on damages in eminent domain cases would not satisfy the constitutional requirement of just compensation for property taken. In holding that the 6% interest rate in the Redwood National Park Act, 16 U.S.C. § 79c(b) (2) (1976), set a floor, not a ceiling, on the interest rate to be paid plaintiffs for the delay in compensating them for their land, the Court of Claims explained: "[T]he rate of interest allowed as part of just compensation is to be derived from the economic circumstances of the times intervening the taking and payment dates." *Miller* v. *United States,* 620 F.2d 812, 838 (Ct. Cl. 1980), quoting *Tektronix, Inc.* v. *United States,* 552 F.2d 343, 353 (Ct. Cl. 1977) (Bennett, J., concurring). While 6% a year interest rate exceeded "the rate of interest paid by the United States Treasury on all governmental obligations" in 1968, the year of the taking in *Miller,* the record showed "a rise in interest rates" after 1968. *Miller, supra.* The court thus held: "If 6 percent were viewed as a ceiling on the rate of interest, we would be compelled to conclude that [the Redwood National Park Act] was constitutionally infirm because a 6-percent rate of interest is neither reasonable nor judicially acceptable under the circumstances of plaintiffs' case." *Id.* at 837-838. Other courts have employed similar reasoning to conclude that a flat statutory interest rate of 6% a year would not satisfy the constitutional requirement of just compensation. See, e.g., *Georgia-Pacific Corp.* v. *United*

*States,* 640 F.2d 328, 365 (Ct. Cl. 1980); *United States* v. *Blankinship,* 543 F.2d 1272, 1276 (9th Cir. 1976); *United States* v. *97.19 Acres, More or Less, Located in Montgomery, Washington & Allegany Counties, Md.,* 511 F. Supp. 565, 567 (D. Md. 1981]); *United States* v. *319.46 Acres of Land More or Less, Situate in Cotton & Jefferson Counties,* 508 F. Supp. 288, 290 (W.D. Okla. 1981). The Legislature is presumed to be aware of "the preexisting state of the . . . law," *Meunier's Case, supra,* and is presumed to have been aware of these decisions when it enacted St. 1981, c. 800, § 3, increasing the interest rate from 6% a year to 10% a year.

At the hearing on the motion regarding the calculation of interest, the plaintiffs introduced in evidence sections from a report prepared by the New York investment firm of Salomon Brothers Inc., entitled, "Analytical Record of Yields and Yield Spreads," and dated May, 1983. They also submitted an affidavit from Charles S. Boit, an investment analyst and advisor, which attested to the reliance by the financial community on this report. The report presents average interest rates for the years 1973 to 1982 for United States government securities varying in maturity from three months to 30 years, for one year Treasury bills and prime certificates of deposit, and for various short term instruments including Treasury bills, agencies, and private money market instruments. A sample of some of these rates is set out in the margin.[8] According to the plain-

[8]

| Year | Ten Year United States Government Securities — Average Yields. | One Year Treasury Bills — Average Yields. |
|------|------|------|
| 1973 | 6.73 | 7.34 |
| 1974 | 7.31 | 8.30 |
| 1975 | 7.42 | 6.65 |
| 1976 | 7.53 | 5.92 |
| 1977 | 7.36 | 5.94 |
| 1978 | 8.33 | 8.20 |
| 1979 | 9.34 | 10.62 |
| 1980 | 11.38 | 11.90 |
| 1981 | 13.88 | 14.73 |
| 1982 | 13.18 | 12.29 |

tiffs' evidence, for almost every category of instrument, for almost every year from 1973 to 1982, the rate of return exceeded 6% a year. From the late 1970's to the early 1980's, interest rates ranged in the double digits. The Legislature is presumed to have been aware of these general economic conditions.[9]

Given this general knowledge of the dramatic increase in prevailing interest rates and the presumption that the Legislature is aware of, and conforms to, constitutional requirements, we discern the main object of the 1981 amendment to have been to ensure that persons whose property is taken for public use receive just compensation. For this to have been the case, however, the Legislature must have intended that the amendment be retroactive to takings which occurred before the amendment's effective date. If the amendment were prospective only, or if it were retroactive only to April 13, 1982, it would not cure the "evil or mischief toward which [it] was apparently directed." *Meunier's Case, supra.* Persons whose property was taken prior to April 13, 1982, would not receive interest at the new 10% rate for any period of delay before April 13, 1982. They would continue to receive 6% a year interest for any period before April 13, 1982, including periods when the prevailing interest rate was substantially higher than 6%. Thus, persons would remain undercompensated in violation of constitutionally mandated requirements.

A further argument in favor of the full retroactivity of the 1981 amendment is found in the fact that the Legislature did not include an express nonretroactivity clause in St. 1981, c. 800, § 3. By contrast, in 1963, the last time the Legislature raised the interest rate payable on damages in eminent domain cases, it did include an express nonretroactivity provision.

---

[9] As an indication of the Legislature's awareness of the rapid rise in interest rates in the late 1970's and early 1980's, we note that the Legislature raised the rate of interest payable on tort and contract damages from 8% a year to 10% a year in 1980, and from 10% a year to 12% a year in 1982. St. 1980, c. 322, § 2. St. 1982, c. 183, §§ 2, 3.

St. 1963, c. 793, § 3.[10] The Legislature clearly is aware of how to limit the applicability of such a statutory readjustment of the interest payable. The decision not to include a nonretroactivity section in the 1981 amendment should be interpreted as an indication of legislative intent that the 1981 amendment be applied retroactively.[11] The omission of limiting language is significant because, with the exception of the nonretroactivity provision and the actual rate of interest inserted, the pertinent language of the 1981 amendment is the same as that of the 1963 amendment.

We conclude, therefore, that St. 1981, c. 800, § 3, applies to a verdict for damages for a taking of real estate where the verdict is rendered after the effective date of the statute. Accord-

---

[10] Statute 1963, c. 793, § 3, provided in pertinent part: "Notwithstanding any provisions to the contrary of section thirty-seven of chapter seventy-nine of the General Laws as amended by section one of this act . . . the provisions of said section[ ] thirty-seven . . . in effect immediately prior to the effective date of this act shall remain in effect with respect to interest on damages . . . *by reason of takings made prior to said effective date*" (emphasis supplied).

The case of *Shelist* v. *Boston Redevelopment Auth.*, 350 Mass. 530 (1966), on which the defendant relies, is distinguishable. In *Shelist* the court construed St. 1964, c. 548, § 2, which amended G. L. c. 79, § 37 (as most recently amended by St. 1963, c. 793, § 1), by adding a sentence providing for postjudgment interest. The "notwithstanding" sentence in § 3 of c. 793 limiting the date of applicability was not carried forward. The court noted the distinction between prejudgment interest and postjudgment interest, and rejected a claim of implied repeal of the nonretroactivity provision. *Id.* at 533. Accordingly, the court held the 1963 amendment to continue to have only prospective application.

[11] Another argument for the retroactivity of the 1981 amendment can be made by a comparison of this amendment with amendments to similar statutes. *Hadley* v. *Amherst*, 372 Mass. 46, 51 (1977). In 1980 the Legislature raised the interest rate payable on damages awarded in tort and contract cases from 8% a year to 10% a year. St. 1980, c. 322, §§ 2, 3. In doing so, the Legislature included an express nonretroactivity provision which read: "Section two of this act [raising the interest rate to 10% a year in tort and contract actions] shall apply to causes of action commenced on and after the effective date of this act." St. 1980, c. 322, § 3. The Legislature's decision in 1981 not to include a nonretroactivity provision in St. 1981, c. 800, § 3, one year after it had included such a provision in a parallel amendment, St. 1980, c. 322, §§ 2, 3, provides a further argument in favor of the retroactivity of St. 1981, c. 800, § 3.

ingly, the plaintiffs are entitled to interest at the rate of 10% a year from the date of the taking to the date of the entry of judgment. The judgment entered is to be vacated, and a new judgment is to be entered in accordance with this opinion.

*So ordered.*