SALEM COUNTRY CLUB, INC. *vs.* PEABODY REDEVELOPMENT
AUTHORITY.

Essex.   October 29, 1985. — January 17, 1986.

Present: GREANEY, C.J., PERRETTA, & KASS, JJ.

*Damages,* Eminent domain. *Eminent Domain,* Damages, Interest. *Value.*
*Evidence,* Value. *Interest.*

In a proceeding for assessment of damages following the taking of a parcel
    of land by eminent domain the judge properly heard and considered
    evidence concerning the likelihood of future public action and private
    land acquisition which would improve access to the land taken. [435-437]
Interest awarded in an eminent domain proceeding was to be recomputed
    at the rate of ten percent per annum in accordance with G. L. c. 79,
    § 37, as appearing in St. 1981, c. 800, § 3. [437-438]

CIVIL ACTION commenced in the Superior Court Department
on September 13, 1978.

The case was heard by *Robert J. Hallisey, J.*

*Eugene G. Panarese* (*Daniel B. Kulak,* Assistant City So-
licitor, with him) for the defendant.

*Gordon H. Piper* (*Joseph L. Cotter* with him) for the plain-
tiff.

KASS, J. In assessing eminent domain damages sustained by
Salem Country Club, Inc. (Salem), from the loss through a
taking of about forty-two and a half acres, the trial judge,
sitting without a jury, heard and considered evidence concern-
ing the likelihood of public action and private land acquisition
which would improve access to the land taken. Receiving and
considering that evidence, the taking authority argues, was
error. We affirm the judgment, insofar as it fixed the fair
market value of the premises taken at $957,150. Interest will
have to be recalculated.

We summarize facts found by the trial judge which are
pertinent to the problem at hand. The locus had about 2,700

feet of frontage along the southerly side of Route 128 in Pea-
body. At the time of the taking, April 27, 1977, the locus
enjoyed the distinction of being the only property anywhere
near its size fronting on Route 128 which was not yet in the
process of development. Light industrial, commercial, and of-
fice building uses were the highest and best for the premises,
consistent with the pattern along Route 128 from Gloucester
to Braintree. For all its promise, however, the site was not
without its handicaps. It presented ledge, boulders, wetlands,
and limited and awkward access.

Depending on the point of view, those site characteristics
presented a blight or the challenge of a problem to be solved.
The judge proceeded, reasonably, on an underlying assumption
that optimism generally swells the heart of a real estate de-
veloper. An "optimistic buyer," the judge found, would expect
to solve the site's development problems and have very valuable
property. As to access, the hypothetical willing buyer would
take into account plans of the State Department of Public Works
to relocate Route 128 in a fashion which would give the locus
access on a substantial street. That buyer, the judge also found,
would expect to acquire land along Summit Avenue so that
the relatively narrow access which it afforded could be ex-
panded to a twenty-five foot paved road on a fifty-foot wide
layout.

Similarly, the willing buyer would expect to make acquisi-
tions to place additional access for vehicles and utilities along
Summit Street (as distinguished from Summit Avenue). He
would expect, on the basis of comparable experience with
comparable sites, to obtain permission from the State Depart-
ment of Environmental Quality Engineering, in exchange for
setting aside retention areas or ponds, to fill portions of the
wet area. He could also reasonably consider "the likelihood
that Peabody would join in an effort to develop the area into
a . . . source of jobs, services and taxes by contributing to the
development of the ways and utilities."

In summary, the judge accepted the proposition that fair
market value, i.e., the highest price which a willing buyer
would pay to a willing seller, both aware of the facts and

neither under compulsion,[1] would reflect that circumstances bearing on the value of the locus would change in a manner likely to increase its value.

A trier of fact fixing just compensation should consider potential uses of land and the possibility of surmounting development handicaps, "with discounts for the likelihood of their being realized and for their futurity." *Skyline Homes, Inc.* v. *Commonwealth,* 362 Mass. 684, 686-687 (1972), and authorities cited. *Roach* v. *Newton Redevelopment Authy.,* 8 Mass. App. Ct. 618, 624 (1979), *S.C.,* 381 Mass. 135 (1980). As to future changes which bear on value, our cases have dealt largely with anticipated favorable zoning relief or the grant of use permits. See *Wenton* v. *Commonwealth,* 335 Mass. 78, 81-83 (1956); *Skyline Homes, Inc.* v. *Commonwealth,* 362 Mass. at 687-688; *D'Annolfo* v. *Stoneham Housing Authy.,* 375 Mass. 650, 656 (1978); *Colonial Acres, Inc.* v. *North Reading,* 3 Mass. App. Ct. 384, 386 (1975); *Roach* v. *Newton Redevelopment Authy.,* 8 Mass. App. Ct. at 624-625; *Young Men's Christian Assn.* v. *Sandwich Water Dist.,* 16 Mass. App. Ct. 666, 669-670 (1983).

Those authorities make the point that anticipation of favorable events may not be unduly speculative or conjectural. We are to deal with informed mercantile calculations, not hallucinations or guesswork. *Skyline Homes, Inc.* v. *Commonwealth, supra* at 687. Whether favorable action by public authorities or others "was so likely to eventuate and so imminent as to deserve being taken into account, is a matter for demonstration" through evidence. *Ibid.* The judge has discretion in deciding whether the proof has gone far enough. *Ibid.*

Zoning was not the problem in this case. The zoning classification which applied to the premises accommodated the various uses which Salem urged, and the judge found, were the highest and best. Here the judge considered the likelihood of land acquisition by a hypothetical willing buyer for better access, the possibility of adjusting the wetlands problem, the

---

[1] *Epstein* v. *Boston Housing Authy.,* 317 Mass. 297, 299 (1944). *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.,* 335 Mass. 189, 193 (1956).

likely relocation of Route 128 so as to provide not only frontage but access on the former path of that road, and the favorable support for development of the parcel by the city of Peabody. The range of prospective change which the judge took into account as bearing on the value of the land was wider than zoning, but not intrinsically different in kind. See *United States ex rel. TVA.* v. *Powelson,* 319 U.S. 266, 275-276 (1943) (value of land in combination with other parcels); *United States* v. *29,930 Square Feet of Land, More or Less, Situate in Borough of Brooklyn, Kings County,* 49 F.Supp. 383, 385 (E.D. N.Y. 1943) (land aggregation); *Arkansas State Highway Commn.* v. *Witkowski,* 257 Ark. 659, 663 (1975). In each instance the exercise the trier of fact must go through is to appraise whether a favorable change in circumstances is reasonably probable, rather than merely possible, and to calculate what an informed, reasonably astute buyer would pay for the probability factor. That is, the hypothetical buyer would not, in the circumstances which here applied, pay for the property as if the access and site development difficulties had already been solved. The buyer would pay a price based on the development difficulties which the site presented, but with a premium based on a reasonable expectation of improving the development capacity of the land. The amount of the premium would be a function, among others, of the location of the land the number of handicaps to be solved, the time estimated to solve them, the cost of carrying the land while attempts are made to solve the problems, and the strength of evidence indicating that the problems will, indeed, be solved.

In the case at bar, there was evidence that, at the time of the taking, the Department of Public Works had detailed relocation plans, supported by completed environmental impact statements, which would substantially improve access to the locus. "[E]xpectation . . . that a highway . . . will be called for by the public interest, and that from the physical conformation of the country it must follow a certain route, adds an appreciable value to the land along the probable route." *Stafford* v. *Providence,* 10 R.I. 567, 570 (1873). There was evidence

that, in several of the transactions offered as comparable sales to establish a market value for the locus, the developers had overcome similar development handicaps; i.e., the problems which beset the locus were par for the Route 128 course. So far as the locus was concerned, there were four possible methods of improving access, thus enhancing the probability that at least one of those methods would be realized.

That the judge did not give excessive weight to the "potentialities factor," that he kept a grip on reality, is borne out by the value, $22,500 per acre, which he placed on Salem's land at the time of the taking. That was a lower figure than was offered by either of Salem's appraisers, one of whom said he had factored into his price the comparatively limited access which the locus presented when it was taken.

In sum, there was an evidentiary basis for the judge to consider the effect on value of a reasonably probable change in circumstances.[2] Once that is established, the findings of fact made by the judge enjoy their usual momentum; they are not to be set side unless clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). Here for example, the judge had the advantage of a view and numerous graphic exhibits not part of the record appendix or otherwise furnished to this court. See *Ricky Smith Pontiac, Inc.* v. *Subaru of New England, Inc.,* 14 Mass. App. Ct. 396, 405 (1982). We conclude that the judge did not improperly consider and weigh the probability of access improvements and other site development potentialities.

There remains a question pertaining to the calculation of interest. Following the decision in *Verrochi* v. *Commonwealth,* 394 Mass. 633 (1985), a single justice of this court granted

---

[2] The taking by the Peabody Redevelopment Authority was independent of the proposed road improvements by the Commonwealth. Thus, this is not a case where a landowner seeks impermissibly to "recover the enhancement in value due to the improvement for which the land is taken." *Cole* v. *Boston Edison Co.,* 338 Mass. 661, 665-666 (1959). Instead the plaintiff seeks to recover increased value resulting from the proposed relocation of Route 128. "If [land] is in the neighborhood of, but not included within the limits of a public improvement, its value for use in connection therewith may be enhanced." *Smith* v. *Commonwealth,* 210 Mass. 259, 263 (1911).

leave to Salem to file a late appeal from a judgment (entered August 27, 1984) which reflected a failure of the trial court clerk to compute interest in accordance with G. L. c. 79, § 37, as appearing in St. 1981, c. 800, § 3.

Computation of interest on the judgment was a ministerial act and properly a subject for relief in this court. See *Frank D. Wayne Associates* v. *Lussier,* 394 Mass. 619, 622 (1985). The trial judge did not compute the interest and the the signatory to the judgment — quite properly — was the clerk. See *Worsnop* v. *Texaco, Inc.,* 386 Mass. 1005, 1006 (1982). The clerk did not have the benefit of the *Verrochi* decision. The plaintiff's entitlement to just compensation, however, included interest, under G. L. c. 79, § 37, as amended by the 1981 statute, at the proper rate of ten percent. *Verrochi* v. *Commonwealth,* 394 Mass. at 636-643. Accord *Hargrove* v. *Minuteman Regional Vocational Technical Sch. Dist.,* 394 Mass. 1010 (1985); *Holyhood Cemetery Assn.* v. *Boston,* 394 Mass. 1011 (1985).

The judgment is to be modified by recomputing interest at ten percent per year from the date of the taking until the entry of the new judgment. As so modified, the judgment is affirmed.

*So ordered.*