Guy C. STEPHENS, Administrator of
the Estate of Carrie Lynn
Stephens, Plaintiff,

v.

Beverly WALKER and P.A.M.
Transport, Inc., Defendants.

John R. DONAHUE, Administrator of
the Estate of Brent C.
Donahue, Plaintiff,

v.

Beverly WALKER and P.A.M.
Transport, Inc., Defendants.

Civ. Nos. FA–90–8, FA–90–10.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

July 12, 1990.

Lee M. Berger, Berger & Markir, Buzzards Bay, Mass., Howard T. Owens, Jr., Owens, Schine, Nicola & Donahue, Bridgeport, Conn., for plaintiffs.

John R. Bologna, Young Wha Lee, Madan & Madan, John P. Bourgeois, Joseph B. Bertrand, Murphy, DeMarco & O'Neill, Boston, Mass., for Beverly Walker.

Thomas D. Burns, Michael J. Grace, John P. Walker, Burns & Levinson, Boston, Mass., for P.A.M. Transport, Inc.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Currently pending in the above cases are the motions of the plaintiffs for the issuance of writs of attachment. Plaintiffs seek an order from this court authorizing the attachment of one and one-half million dollars worth of real property owned by defendant, P.A.M. Transport, Inc. The real property is physically located in the State of Arkansas. P.A.M. opposes the motions.

These motions arise out of a motor vehicle accident which occurred in the State of Massachusetts. Plaintiffs have initiated wrongful death actions in federal district court in Massachusetts. In those actions it is alleged that Beverly Walker, while operating a truck owned by P.A.M., collided with vehicles operated by decedents, Donahue and Stephens. Walker was an employee of P.A.M. on the date in question. Donahue and Stephens were killed in the accident.

In April, 1990, plaintiffs filed, in the Massachusetts federal court, motions for the issuance of writs of attachment against all real estate, goods, and chattels owned by P.A.M., which, by definition, essentially means everything owned by P.A.M. with the exception of intangible assets. On May 9, 1990, P.A.M. filed an opposition to these motions and on May 10, 1990, Walker did likewise. Both defendants requested oral argument per Rule 17 of the local rules of the Massachusetts district court.

On May 15, 1990, the Massachusetts district court, without a hearing and without receiving any evidence, granted plaintiffs' motions for attachment, limited to $1,500,000 worth of P.A.M.'s real property. However, the court declined to direct the United States Marshal for the Western District of Arkansas to attach the Arkansas property. Actually, the Massachusetts district judge [1] merely made handwritten notations in the margins of the motions. The handwritten notations state, *inter alia:*

May 15, 1990,

Motion allowed in the amount of $1,500,000 as to real estate only. The attachment may be vacated upon an adequate showing (of sufficient insurance). William G. Young, District Judge.

Nowhere in the body of the motions, the handwritten notations, nor in the attached affidavits was it reflected that the real property to be attached is located in Arkansas. A "schedule" attached to the proposed writs does contain a lengthy description of P.A.M.'s Arkansas property. However, these writs were submitted to this court for issuance and it is not clear whether the "schedules" were appended to the motions filed in Massachusetts. Presumably because Judge Young declined to issue the requested writs directing the Arkansas Marshal to attach the property, plaintiffs now ask this court to do so.

In support of their motions, plaintiffs submit an "attorney's affidavit of facts, damages, and insurance" which recites that plaintiffs' decedents were killed by an accident in Massachusetts involving Walker, that Walker's conduct likely will support an award of punitive damages against P.A.M., that plaintiffs will likely receive millions of dollars in compensatory and punitive damages, and that P.A.M. has a one million dollar per person/per accident insurance policy with a two million dollar excess policy.

It appears that the substantive basis for the issuance of the attachment order and

---

**1.** Hon. William G. Young, United States District Judge for the District of Massachusetts.

the procedure employed by Judge Young are materially different from those employed in Arkansas. Rule 4.1 of the Massachusetts Rules of Civil Procedure provides in pertinent part:

\*    \*    \*    \*    \*    \*

No property may be attached unless such attachment for a specified amount is approved by order of the court. Except as provided in subdivision (f) of this rule, the order of approval may be entered only after notice to the defendant *and hearing and upon a finding by the court* that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.

An action in which attachment of property is sought may be commenced only by filing the complaint with the court, together with a motion for approval of the attachment. The motion shall be supported by affidavit or affidavits meeting the requirements set forth in subdivision (f) of this rule, the motion and affidavit or affidavits with the *notice of hearing* thereon shall be served upon the defendant in the manner provided by Rule 4, at the same time the summons and complaint are served upon him. (emphasis added).

\*    \*    \*    \*    \*    \*

Rule 4.1 clearly requires "notice to the defendant and hearing and ... a finding ... that there is a reasonable likelihood that the plaintiff (will prevail) ..." in a certain amount with reference to the value of the property attached and any available insurance. Defendants have alleged that although they were notified of the plaintiffs' desire to attach everything owned by P.A.M., no hearing was held and any findings or orders were made and issued completely *ex parte.*

In that regard the court notes that Massachusetts has a procedure by which an *ex parte* order of attachment may be procured. That procedure is set forth in Rule 4.1(f) to which reference was made in the portion of Rule 4.1 quoted above:

**(f) Ex Parte Hearings on Property Attachments.** An order approving attachment of property for a specific amount may be entered ex parte upon *findings* by the court that there is a reasonable likelihood that the plaintiff will recover judgment in an amount equal to or greater than the amount of the attachment over and above any liability insurance known or reasonably believed to be available and that either (i) the person of the defendant is not subject to the jurisdiction of the court in the action, or (ii) there is a clear danger that the defendant if notified in advance of attachment of the property will convey it, remove it from the state or will conceal it, or (iii) there is immediate danger that the defendant will damage or destroy the property to be attached. The motion for such ex parte order shall be accompanied by a certificate by the plaintiff or his attorney of the amount of any liability insurance which he knows or has reason to believe will be available to satisfy any judgment against the defendant in the action. The motion, in the filing of which the plaintiff's attorney shall be subject to the obligations of Rule 11, shall be supported by affidavit or affidavits meeting the requirements set forth in subdivision (h) of this rule. (emphasis added).

It is at first apparent that the *ex parte* procedure requires the same showing as that required in an adversary proceeding wherein both sides may be heard, as well as additional findings justifying the issuance of an *ex parte* order, *i.e.* that the defendant is beyond the jurisdiction of the Massachusetts court, that the defendant will convey the property, remove it from Massachusetts, or conceal it, or that the defendant will damage or destroy the property. It is obvious that none of these additional requirements are met. No one contends that the courts of Massachusetts do not have judicial jurisdiction *in personam* of P.A.M. for purposes of the tort litigation. P.A.M. cannot remove the Arkansas

real property from Massachusetts because it was never there. P.A.M. cannot "hide" the real property, nor could there be a showing that P.A.M.'s Arkansas property is in "immediate danger" of being destroyed or damaged. Of the requirements for the issuance of the *ex parte* order the only realistic possibility is that P.A.M. could conceivably convey its Arkansas real property. However, the court notes that Judge Young made no such finding, and it further appears that P.A.M. has not, in fact, conveyed the property even though the "cat is out of the bag" at this juncture. Thus, it would seem that there is no basis under Massachusetts law supporting an *ex parte* attachment of any of P.A.M.'s property (inside or outside of Massachusetts) and Judge Young did not find that there was.

The court cannot determine from the margin notation upon what facts Judge Young relied in issuing the order approving the attachment. The court has to assume that the order was issued solely under Rule 4.1(b) and (c), which seem to require a hearing and certain factual findings. The second paragraph of Rule 4.1(c) seems to imply that the defendant is supposed to be given an opportunity to "show" the extent of any liability insurance available to satisfy any judgment, *before* the order is entered. It is obvious from Judge Young's margin notation that he issued the order subject to being "vacated upon an adequate showing that there is in fact $3,000,000 of insurance funds available to satisfy a judgment ...". Because the defendant was not accorded an opportunity to be heard prior to the issuance of the order, the order logically has to have been premised upon either a presumption that P.A.M. did not have the required insurance or an *ex parte* factual finding to that effect. As it is obvious from the file that Judge Young did not purport to rely upon Rule 4.1(f) and could not have, it appears that Judge Young presumed from the "file" presented to him that such was the fact. Nonetheless, Rule 4.1 seems to allow the defendant to be heard concerning the likelihood of success and the possible extent of any recovery, *before* the order is entered.

▇ This court does not purport to be an expert in Massachusetts pre-judgment attachment procedures, and it is conceivable that Massachusetts law allows this sort of abbreviated procedure. However, this court is not being asked to quash a writ of prejudgment attachment directed against P.A.M.'s Arkansas property for none has been issued. This court interprets Judge Young's notation as being directed against P.A.M.'s real property located in Massachusetts. There are several bases for this conclusion.

First, the court notes that Rule 4.1(b) requires that such a writ be directed "to the sheriffs of the several counties or their deputies," and this court, therefore, assumes that the order applies only to real property which the sheriffs or deputies of the various counties of the state of Massachusetts are authorized by law to attach. Secondly, it has been pointed out that Massachusetts General Laws, Chapter 223, § 20, provides that process, with regard to writs, "may run, and shall be executed and obeyed throughout the commonwealth." Thirdly, the court notes that Rule 4.1(f) allows an *ex parte* order to issue, upon a showing that the property to be attached is in danger of being moved from the state. If Massachusetts courts are empowered to attach property located out-of-state, there is no justification for the issuance of an *ex parte* order simply because the location of the property is to change. Rule 4.1 clearly suggests that it is limited to property located in Massachusetts.

This conclusion is supported by yet another part of Rule 4.1(f). Rule 4.1(f) allows an *ex parte* issuance of a writ of attachment in cases wherein "the person of the defendant is not subject to the jurisdiction of the court in the action." Rule 4.1(f) thus purports to allow property of a defendant to be seized even when the owner of the property is not subject to the personal jurisdiction of the Massachusetts courts.

▇ It is fundamental that if the courts of the State of Massachusetts lack jurisdiction of the person of a non-resident defendant, as contemplated by Rule 4.1(f), the

Massachusetts courts cannot constitutionally attach out-of-state property owned by the non-resident defendant. This court has a duty to construe Rule 4.1(f) so as to avoid constitutional difficulties, if reasonable principles of interpretation permit it. *See Verrochi v. Commonwealth,* 394 Mass. 633, 477 N.E.2d 366 (1985); *Heber Springs Sch. Dist. v. West Side Sch. Dist.,* 269 Ark. 148, 599 S.W.2d 371 (1980) ("If it is possible for the courts to so construe an act that it will meet the test of constitutionality, they not only may, but should and will, do so.")

Because there are hypothetical circumstances in which the Massachusetts courts could, consistently with the due process clause, attach property located within the state of Massachusetts, even if owned by a non-resident defendant over whom the Massachusetts courts lacked jurisdiction *in personam,* the canons of statutory construction recognized by the courts of Massachusetts and Arkansas require that this court construe Rule 4.1 so as to encompass only property located within the State of Massachusetts. Otherwise, Rule 4.1 would be plainly unconstitutional as applied to a non-resident defendant beyond the reach of the Massachusetts courts. Though there is no contention that P.A.M. is beyond the reach of the Massachusetts courts in the case at bar, this court must examine Rule 4.1 in light of a presumed legislative intent to meet the constitutional requirements of the due process clause of the fourteenth amendment. *See, Verrochi, supra.* Then, it must be presumed that Rule 4.1 governs only the attachment of property located within the borders of the state of Massachusetts. It must also, then, be presumed that Judge Young did not intend to authorize the attachment of real property located in the State of Arkansas.

■ It is well-settled that "the mere presence of property in the state will not alone justify an exercise of jurisdiction. If the cause of action bears no relationship to the property and the defendant has no other contacts with the forum, the state lacks jurisdiction." Leflar, McDougal, and Felix, *American Conflicts Law,* 4th Ed. § 41, p. 134. It cannot be disputed that the mere ownership of land even if attached at the inception of the suit, is no longer a sufficient basis for an exercise of jurisdiction; the cause of action the plaintiff is asserting must arise out of the ownership of the land. This was the holding of *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Of this decision, Dr. Leflar has written:

> *[S]haffer* requires that a state be able to exercise *in personam* jurisdiction over the defendant when using a *quasi in rem* statute....

Leflar, McDougal and Felix, § 41, p. 133.

■ It is now beyond cavil that a state may not exercise jurisdiction over in-state land owned by a non-resident unless the state has *in personam* jurisdiction of the non-resident or the underlying suit is one involving a claim to the property itself. *See Shaffer,* 433 U.S. at 207-08, 97 S.Ct. at 2581.

Therefore, though it is extremely unlikely that the prejudgment attachment of in-state land owned by a non-resident would ever be consistent with the requirements of due process in a tort case not involving that land when the non-resident is beyond the personal jurisdiction of the court, it would be absolutely impossible for a state to constitutionally attach real property located out-of-state owned by a non-resident not subject to the personal jurisdiction of the court.

The point of this tangential discourse is that, in light of the foregoing, the scope of Rule 4.1(f) must, of necessity be confined to the attachment of property located within the State of Massachusetts inasmuch as it purports to apply to defendants beyond the *in personam* jurisdiction of the Massachusetts courts. As questionable as it may be for a Massachusetts court to attach the in-state property of a non-resident defendant beyond the scope of its personal jurisdiction in tort litigation unrelated to the property, no one would contend that a court of Massachusetts may validly attach the out-of-state property of a defendant who is beyond its powers.

Thus, so long as Judge Young's order is limited to any real property of P.A.M. lo-

cated in Massachusetts, it matters not what this court thinks of Massachusetts' substantive or procedural law governing the prejudgment attachment of property. However, for the present, the court notes that the parties have pointed to no express authorization by a Massachusetts statute which would allow the issuance of an attachment directed out-of-state. It has been held that absent such statutory authorization, a writ of garnishment directed out of state is void on its face. *See General Electric Credit Corp. v. Waukesha Bldg. Corp.*, 259 F.Supp. 958 (W.D.Ark.1966). Presumably the same holds true for an attachment of out-of-state lands.

Thus, because Judge Young did not expressly include P.A.M.'s Arkansas real property in his margin notation, and because there does not appear to be any statutory authorization for Judge Young to have done so, this court must conclude that Judge Young's order is directed at P.A.M.'s Massachusetts property only, if any.

■ However, because it is unclear what Judge Young's intent was, the court will discuss what would be the case in regard to the extraterritorial effectiveness under the due process clause and the full faith and credit clause of a foreign attachment directed against out-of-state lands. Judge Young's margin notation does not purport to be a "judgment". It is fundamental that a judgment "to be absolutely entitled to extra state recognition . . . must be final in the sense that it is not subject to being reopened and modified . . .". Leflar, McDougal and Felix, § 83, p. 247. The notation itself shows that it is not a final order and is expressly conditional and subject to vacation and, as such, is not the sort of judicial decision to which the full faith and credit clause applies. It is at once apparent that Judge Young's margin notation is not an order which this court must accord full faith and credit under the federal constitution.

■ Even though the courts of the State of Arkansas may accord full faith and credit to such orders if allowed by the legislature, the full faith and credit clause does not require Arkansas courts to do so. The

question thus becomes whether Arkansas law accords full faith and credit to temporary, conditional orders of a foreign court providing provisional remedies in ongoing litigation in another state. The answer appears to be "no".

In reaching this conclusion the court takes guidance from Arkansas' Uniform Enforcement of Foreign Judgements Act, Ark.Code Ann. § 16–66–601—608. The legislature has defined "foreign judgment" to mean "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." *See* Ark.Code Ann. § 16–66–601.

Because Judge Young's margin notation is not the type of order to which the full faith and credit clause of the federal constitution applies, the Arkansas courts would not accord the order full faith and credit in this State, even if the order was intended to apply to P.A.M.'s Arkansas property.

■ The only issue, then, is whether a sufficient showing has been made which would authorize *this* court to issue a writ of attachment of P.A.M.'s Arkansas property. In resolving this inquiry, the first question is what law is to be applied. Rule 64, Fed.R.Civ.P. states that:

[A]ll remedies providing for seizure of . . . property for the purpose of securing satisfaction of the judgment ultimately to be entered . . . are available under the circumstances and in the manner provided by the law of the state in which the district court is held. . . .

The two exceptions or "provisos" of Rule 64 are inapplicable. Therefore, it is obvious that Arkansas law governs *this* court's issuance of a writ of attachment.

The Arkansas courts have been steadfast in adhering to the requirements of the due process clause with regard to the procedures to be employed by one seeking to execute upon, garnish, or attach the property of another, particularly in cases where a prejudgment interference with property is sought. In *Duhon v. Gravett*, 302 Ark. 358, 790 S.W.2d 155 (1990) the Arkansas

Supreme Court struck down Arkansas' post-judgment execution statutes as violative of the fourteenth amendment. Although the statutes governing writs of execution (*see* Ark.Code Ann. §§ 16–66–211—218; 16–66–301—304; 16–66–401) provide for procedures, including provisions for hearings, whereby a judgment debtor may claim all exemptions to which he is entitled, and further allow a debtor to select what property is to be sold to satisfy the execution, the statutory scheme did not require notice to a judgment debtor of the levy. Notwithstanding that case law required such notice, *see Wade v. Deniston,* 180 Ark. 326, 21 S.W.2d 424 (1929), the statutes failed to require such notice, which, the court held, rendered §§ 16–66–211 and 16–66–401 constitutionally deficient.

*Duhon* followed a line of well-reasoned Arkansas cases explaining the due process rights of debtors and putative debtors. Immediately preceding *Duhon* in the progression of case law was *McCrory v. Johnson,* 296 Ark. 231, 755 S.W.2d 566 (1989). *McCrory* dealt specifically with the prejudgment attachment of property as does the case at bar. Reviewing several cases from the United States Supreme Court, particularly *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the Arkansas Supreme Court held that it is necessary for a prejudgment attachment statutory scheme to meet six procedural "safeguards" in order to withstand constitutional challenge: (1) the affidavit for the writ of attachment must allege sufficient facts which justify attachment (*see* Ark.Code Ann. § 16–110–106); (2) the petitioner must post a bond guaranteeing the defendant damages if the writ is dissolved (*see* Ark. code Ann. § 16–110–107); (3) the respondent must be allowed to regain possession by posting bond (*see* Ark.Code Ann. § 16–110–117); (4) requisite proof of the need for a writ must be made before a judge; (5) an immediate hearing must be allowed, and at the hearing the burden of proof must be with the petitioner to justify the attachment and (6) if the writ is dissolved, damages and attorney's fees must be awarded to the debtor (*see* Ark.Code Ann. § 16–110–131). Even a postjudgment attachment or garnishment scheme must require notice of possible state or federal exemptions and a prompt hearing at which to claim the exemptions. *See Davis v. Paschall,* 640 F.Supp. 198 (E.D.Ark.1986); *Dionne v. Bouley,* 757 F.2d 1344 (1st Cir. 1985).

Because Arkansas' prejudgment attachment statutes did not require notice to the debtor of possible state or federal exemptions (as the postjudgment garnishment statutes now do, *see* Ark.Code Ann. § 16–110–402(1)(A) (Supp.1988)), and further did not require notice to the debtor of the attachment nor require a prompt hearing in which exemptions could be claimed (as the garnishment statutes now require, *see* Ark.Code Ann. § 16–110–402(5) (Supp. 1988)) the statutory scheme was held to be fatally deficient, particularly in view of the fact that writs of attachment could be issued by a clerk rather than by a judge. *See* Ark.Code Ann. § 16–110–106.

As a result of *McCrory,* Arkansas currently has no statutory mechanism for the prejudgment attachment of property. It follows that the motion for writ of attachment must be denied. However, even under Massachusetts law, at least that cited by the parties, it does not appear that the posting of a bond by the petitioner is required nor that the posting of a counterbond by the respondent is allowed. The parties have cited no provision of Massachusetts law requiring notice of possible state or federal exemptions. Finally, even though notice and a hearing appear to be required in Massachusetts, defendant has received no hearing as of yet. Thus, even if Judge Young had purported to authorize the attachment of P.A.M.'s Arkansas property, such would appear to be substantively unjustified as without statutory authorization and procedurally defective as violative of the due process clause of the fourteenth amendment. Such an order would appear

to be void on its face as applied to Arkansas property, and it is doubtful that this court could accord Judge Young's order "full faith and credit" if it was in fact intended to reach P.A.M.'s Arkansas property. *See* Leflar, McDougal, and Felix, §§ 73–82. Further, the effects of *res judicata* or collateral estoppel are impossible to ascertain, as no findings were made, nor was P.A.M. given an opportunity to litigate the factual issues relevant, under Massachusetts law, to the attachment issue.

In closing, the court notes that plaintiffs have moved for an extension of time until August 31, 1990, in which to file a memorandum in support of their motions for the issuance of the writs of attachment. The court does not intend to wait six and one-half weeks for the plaintiffs to advise the court why they believe themselves entitled to the issuance of the writs they requested more than two weeks ago. Plaintiffs' motions for extension of time will be denied. If plaintiffs wish to renew their motions after August 31, 1990, they are at liberty to do so. However, the motions for the issuance of writs of attachment will be denied at this time.

For the foregoing reasons, plaintiffs' motions for issuance of writs of attachment will be denied. A separate order will be entered concurrently herewith.