AMERICO LOPES, trustee,[1] *vs.* CITY OF PEABODY.

Essex. September 13, 1999. - November 3, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Eminent Domain,* Damages, Interest. *Damages,* Eminent domain, Interest. *Interest. Practice, Civil,* Motion to amend.

This court concluded that the provisions of G. L. c. 79, § 12, and G. L. c. 79, § 35A, requiring, in eminent domain cases, a separate determination of damages relating to real estate taxes, were applicable to a temporary regulatory taking, with the result that a landowner whose property was completely so taken from 1981 to 1995 was entitled to reimbursement, plus interest, of the real estate taxes he paid during that period. [311-313]

A plaintiff in a land damage case involving a temporary regulatory taking, who failed to raise the issue of prejudgment interest on his jury award in his initial appeal, could not, three years later, bring a motion under Mass. R. Civ. P. 60 to amend the judgment, where the omission was not a clerical mistake, but rather resulted from the judge's submission of the calculation of interest to the jury as part of the damage award [313-314]; and, further, a motion under rule 60 (b) was, in the circumstances, time barred [314]; in any event, where the plaintiff had requested that the judge submit the interest calculation to the jury that awarded damages, he was not entitled to further interest [314-316].

CIVIL ACTION commenced in the Superior Court Department on December 28, 1990.

The case was tried before *Daniel A. Ford,* J., and a motion for relief from judgment was heard by *Howard J. Whitehead,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Nicholas J. Decoulos* for the plaintiff.

*Lawrence J. O'Keefe,* City Solicitor, for the defendant.

IRELAND, J. This appeal concerns damages for the city of Peabody's (city's) temporary regulatory taking of Americo Lopes's property through an overly restrictive zoning provision on part of his lot. During the ten years since the commencement of

[1] Of the 841 Lake Realty Trust.

Lopes's original action to invalidate the zoning provision as it applied to him, this case has been before the Land Court, Superior Court, Appeals Court, this court, and the United States Supreme Court. The new issues raised in this appeal are whether Lopes is entitled (1) to be reimbursed for real estate taxes paid during a temporary regulatory taking of his property; and (2) to receive prejudgment interest on an award of damages for the temporary loss of the use of his property when the jury were already instructed to include interest as part of the damage award. We reverse in part, and affirm in part. We conclude that Lopes is entitled to the same reimbursement of real estate taxes that he would receive if his land had been taken by eminent domain but that he is not entitled to additional prejudgment interest. We remand the case to the Superior Court for proceedings consistent with this opinion.

1. *Background and history.* This case is factually and procedurally complex. See *Lopes* v. *Peabody*, 417 Mass. 299, 300-302 (1994) *(Lopes I).* In December 1989, the plaintiff, as trustee of the 841 Lake Realty Trust, commenced an action in the Land Court pursuant to G. L. c. 185, § 1 (*j* ¹/₂), and G. L. c. 240, § 14A, to challenge the validity of a section of the Peabody zoning ordinance (§ 4.3.4) that restricted the use of his land.[2] The zoning ordinance at issue established a wetlands conservancy district (district) in various parts of the city, including land that abuts Devil's Dishfull Pond, a great pond. The plaintiff's land, which he acquired in 1981 — six years after the city had adopted the challenged zoning provision — was located, in large measure, within the district.[3] The elevation of all but a small portion of the lot was below the 88.5 foot contour of the district. After the city refused the plaintiff's request to reduce the minimum elevation requirement, the plaintiff sought redress in the Land Court.

Following a trial, the Land Court found that the city's determination of 88.5 feet as the minimum permitted elevation in the district at Devil's Dishfull Pond was a valid exercise of

[2]The ordinance forbids the construction of any new building or structure within thirty feet of the wetland or below an elevation of 88.5 feet above sea level. Permitted uses in a wetlands conservancy district, subject to the approval of the city's conservation commission, included farming, nurseries, and recreation.

[3]We described, in detail, the reasons Lopes was not estopped from challenging the zoning regulation in *Lopes I.* See *Lopes* v. *Peabody*, 417 Mass. 299, 303 (1994) *(Lopes I).*

legislative discretion, was not arbitrary or unreasonable, and was enforceable as applied to the plaintiff's lot. Accordingly, the Land Court ruled that there had been no taking of the plaintiff's land for which he was entitled to compensation.

On appeal, the Appeals Court, in an order and unpublished memorandum pursuant to its rule 1:28 (32 Mass. App. Ct. 1124 [1992]), affirmed the Land Court's decision. We then denied the plaintiff's application for further appellate review (413 Mass. 1105 [1992]), and the plaintiff petitioned the Supreme Court of the United States for a writ of certiorari. On March 22, 1993, the Supreme Court granted the writ, vacated the judgment entered in the Land Court, and remanded the case to the Appeals Court for further consideration in light of the Court's decision in *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003 (1992). *Lopes* v. *Peabody*, 507 U.S. 981 (1993). In *Lucas*, "the Supreme Court held that a landowner was entitled to compensation for a taking when a zoning regulation effectively prohibited all economically beneficial use of the land, unless the prohibition could be independently justified under principles of . . . nuisance or property law." *Lopes I, supra* at 300.

Following remand to the Appeals Court, we granted the plaintiff's application for direct appellate review. In *Lopes I, supra* at 304, we discussed the factors a court must consider to determine whether there has been a regulatory taking of property, i.e., whether application of the ordinance at issue deprived the plaintiff of an economically beneficial use of his land, and remanded the matter to the Land Court to make such a determination.[4]

On remand, a Land Court judge found that the 88.5 feet elevation requirement set forth in the zoning ordinance was unnecessary to further or protect the pertinent public interests. The court also found that an 86.6 feet elevation requirement was sufficient to meet the asserted objectives of the city's zoning ordinance. On May 11, 1995, the judge issued an amended judgment that declared that, although there had not been a permanent regulatory taking of the plaintiff's property, "there ha[d] been a temporary taking as recognized in *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles*[, 482 U.S. 304 (1987)]" (*First English*). Neither party appealed from the original or the amended judgment.

---

[4]In *Lopes I, supra* at 302-303 n.7, we noted that the plaintiff's action only raised the constitutional validity of the city's zoning ordinance and did not address the separate claim for damages due him as a result of the alleged taking.

Shortly thereafter, this case entered a second phase in which the plaintiff sued to recover damages for the fourteen years that the ordinance had been in effect. On October 4, 1995, nearly five months after the Land Court entered the amended judgment, the plaintiff moved for an "assessment of costs," alleging that he was entitled to reimbursements for his costs ($21,485.08) pursuant to G. L. c. 261, §§ 1 and 13, and Mass. R. Civ. P. 54 (d), 365 Mass. 820 (1974), and the real estate taxes he had paid during the temporary taking ($9,105.23). The Land Court denied this motion, the plaintiff appealed, and this court allowed the plaintiff's application for direct appellate review. We affirmed the Land Court's denial of his motion for costs after concluding that the plaintiff's motion, which we characterized as a motion to alter or amend the judgment under Mass. R. Civ. P. 59 (e), 365 Mass. 820 (1974), was untimely because it had been filed more than four and one-half months after the Land Court entered judgment. *Lopes* v. *Peabody,* 426 Mass. 1001, 1001-1002 (1997) (*Lopes II*). We further noted that the plaintiff's claims for other damages, including reimbursement of real estate taxes, were the subject of a separate action pending in the Superior Court. *Id.* at 1002 n.3.

On September 5, 1995, trial commenced in the Superior Court on the plaintiff's parallel action for damages resulting from the temporary taking.[5] During redirect examination, the plaintiff's counsel attempted to elicit from his client the amount of real estate taxes that he paid on his property during the period of the temporary taking. The judge sustained the city's objection to this line of questioning. During a bench conference on this issue, the judge stated that "the fact that [the plaintiff] may have paid real estate taxes on the property is not relevant because it [is] not the measure of damages." The judge further stated that if the plaintiff were successful in the lawsuit he would be "compensated for [the] loss of use . . . [b]ut he still has to pay taxes on the property." The judge then permitted the plaintiff to make an offer of proof as to what he had paid the city in real estate taxes during the temporary taking, a total of $9,105.

At the close of the evidence, the judge submitted the case to

---

[5]The plaintiff had filed a separate action for damages for the loss of use of his property on December 28, 1990. This complaint remained in abeyance while the courts resolved the underlying question of the constitutionality of the ordinance at issue. *Lopes* v. *Peabody,* 426 Mass. 1001, 1002 n.3 (1997) (*Lopes II*). See *Lopes I, supra* at 302-303 n.7.

the jury with a verdict slip that requested the jurors to determine the "single sum of money [that] would fairly and adequately compensate the plaintiff for the value of his loss of use of the property in question during the time that the temporary taking [had been] in effect." The jury returned a verdict for the plaintiff in the sum of $15,000, and judgment was entered on September 11, 1995.

On September 14, 1995, the plaintiff moved for a new trial pursuant to Mass. R. Civ. P. 59, 365 Mass. 827 (1974), claiming that the amount of the verdict was inadequate, against the evidence and weight of the evidence, and contravened the law. In support of the motion, the plaintiff claimed that the judge erred in refusing to admit in evidence proof of the real estate taxes he paid during the period of the taking. On September 18, 1995, the judge denied this motion, and the plaintiff filed a timely notice of appeal of the judgment and the decision denying his motion for a new trial.

On July 21, 1998, nearly three years later, the plaintiff filed a motion in the Superior Court pursuant to Mass. R. Civ. P. 60, 365 Mass. 828 (1974), seeking relief from the judgment of damages. In this motion, the plaintiff requested that the court amend the judgment and award him prejudgment interest from December 28, 1990, the date he commenced the action for damages. The plaintiff also requested that the court correct a typographical error in the judgment by striking wording that indicated that "the plaintiff [should] take nothing."

On September 3, 1998, after a hearing on this motion, the motion judge concluded that "an award of interest is, in the unique circumstances of this case, a substantive one, in that it is a matter requiring a judicial determination." The judge then declined to reach the merits of this issue because the plaintiff had not complied with the time limits set forth in rule 60 (b). However, as to the other error alleged, the typographical error, the judge ruled that such an error was ministerial and correctable pursuant to Mass. R. Civ. P. 60 (a).[6] On September 10, 1998, the plaintiff filed a timely notice of appeal from the denial of the motion for relief from judgment. We then transferred the case to this court on our own motion.

---

[6]On September 3, 1998, the Superior Court issued an amended judgment that corrected the typographical error. The order provided that the plaintiff recover from the city the sum of $15,000. There is no record in the Superior Court's docket that the plaintiff filed a notice of appeal from the amended judgment.

2. *Issues on appeal.* Given the complex nature of the proceedings to date, it is important to note that only two narrow issues are before this court on appeal: (1) whether the plaintiff should receive reimbursement of the real estate taxes he paid during the temporary regulatory taking; and (2) whether he should be awarded prejudgment interest on the jury award of damages from the date he commenced the action for damages, December 28, 1990.

The parties do not contest the Land Court's determination that a temporary taking occurred during the period from 1981 to 1995. To date, the cases in which we have considered temporary regulatory takings have focused on whether a compensable taking actually occurred, that is whether the challenged ordinance deprived a property owner of all economically beneficial or productive use of the property or interfered with the owner's investment-based expectations.[7] As neither party contests the Land Court's decision, this court proceeds from the assumption that a compensable temporary regulatory taking took place from 1981 to 1995, and that there was no economically beneficial use of the property during that time.[8]

---

[7]See *Daddario* v. *Cape Cod Comm'n,* 425 Mass. 411, 417-418, cert. denied, 522 U.S. 1036 (1997) (holding that record did not support finding that regulatory taking had occurred by commission's denial of request to extract sand and gravel from parcel in agricultural district where the commission's decision did not preclude less extensive mining than that proposed and property had substantial value for alternative uses); *Leonard* v. *Brimfield,* 423 Mass. 152, 154-156, cert. denied, 519 U.S. 1028 (1996) (holding that town's enforcement of flood plain restriction did not constitute compensable taking of plaintiff's property given that she had failed to demonstrate that [1] she had reasonable investment-backed expectation that she could subdivide property where she purchased the property subject to restrictions on building in flood plain; [2] economic impact was not so severe where land remained suitable for original agricultural purposes; and [3] permit process amounted to physical invasion by government); *Steinbergh* v. *Cambridge,* 413 Mass. 736, 741-747 (1992), cert. denied, 508 U.S. 909 (1993) (concluding that ordinance that denied owners of more than one condominium unit right to sell unless city's rent control board granted removal permit or tenant had exemption certificate did not constitute temporary regulatory taking where challenged ordinance did not deny all economically beneficial or productive use of owner's interest in property nor interfered with investment-based expectations).

[8]In this case, the Land Court judge based his ruling on the United States Supreme Court's decision in *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles,* 482 U.S. 304 (1987) (*First English*). There, the Supreme Court held for the first time that a landowner subject to a temporary regulatory taking could recover monetary damages, instead of be-

The parties also do not appeal from the jury's $15,000 basic award of damages, or the underlying methodology the judge used to instruct the jury on the damages question. Although the parties do not appeal from this award, we note that the law surrounding the basic measure of damages for temporary regulatory takings is relatively new and far from settled. See *Herrington* v. *County of Sonoma*, 790 F. Supp. 909, 913 (N.D. Cal. 1991); *Wheeler* v. *Pleasant Grove*, 833 F.2d 267 (11th Cir. 1987), appeal after remand, 896 F.2d 1347 (11th Cir. 1990); Comment, Calculating Compensation for Temporary Regulatory Takings, 42 U. Kan. L. Rev. 201 (1993). Rather than contesting the basic measure of damages, Lopes asks that the real estate taxes paid during the temporary taking and prejudgment interest be added to the jury award. Therefore, we shall consider each of these more technical points in turn.

a. *Real estate taxes.* Lopes argues that, in addition to the basic damage award, he is also entitled to a refund of real estate taxes that he paid during the temporary regulatory taking. The judge prevented Lopes from presenting evidence of the real estate taxes paid to the jury, and did not consider the tax question separately after the jury returned their verdict. Lopes argues that he is entitled to a tax reimbursement based on that part of G. L. c. 79, § 12,[9] which provides for real estate taxes as an element of damage in eminent domain cases, and G. L. c. 79, § 35A,[10] the portion of the eminent domain statute that provides

---

ing limited to seeking injunctive relief through invalidation of the regulation. The Court's decision also made it clear that the rule announced regarding monetary damages only applied in a situation where a land owner was deprived of one hundred per cent of the value of the property.

[9]"Whenever the title or interest taken is such that the property will be exempt from taxation so long as it is held and used for the purpose for which it is taken, the damages for the taking shall include an amount or amounts separately determined and stated which shall be estimated to be equal to that portion of the tax assessed upon the property for the fiscal year in which it is taken which, if the tax were apportioned pro rata according to the number of days in such fiscal year, would be allocable to the days ensuing after the taking, and an additional amount equal to the tax assessed against the property for the ensuing fiscal year, if the taking is made between January first and June thirtieth inclusive." G. L. c. 79, § 12.

[10]"In case of a trial by jury in a proceeding brought under section fourteen, the amount, if any, to which the petitioner is entitled by reason of the tax assessed upon the property in the year in which it was taken, as provided in sec-

for a separate determination of the real estate tax once a jury have rendered their verdict on damages.

We conclude that G. L. c. 79, §§ 12 and 35A, apply to temporary regulatory takings, and that Lopes is entitled to a reimbursement of the real estate taxes paid from 1981 to 1995. If the city had taken the property through the usual eminent domain process, Lopes would have been entitled to a measure of compensation for the taxes he paid while his land was taken.[11]

Because one hundred per cent of the value of Lopes's land was taken for fourteen years, principles of basic fairness compel the same type of refund of property taxes that he would receive if his land had been permanently taken. See *First English, supra* at 318 (" 'temporary' takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation"). Of course, this rule does not apply in those instances where an economically beneficial use of the property remains. See *id.* at 321 (decision did "not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like").

Adoption of the rule the city advocates, that a property owner's only remedy is a tax abatement, would lead to inefficiency. Under the city's proposed rule, each year a property owner would have to file a separate application for abatement when the parcel of land was affected by a regulation that could be a taking. In this filing, the landowner would necessarily have to estimate the value of the property; but the valuation of the property would be precisely the issue that the parties would meanwhile contest in a separate takings action. In the instant

tion twelve, shall be separately determined by the court, either upon stipulation of the parties or upon evidence received, after the jury has rendered its verdict." G. L. c. 79, § 35A.

[11]The city argues that this provision is inapplicable to temporary regulatory takings, and urges us to hold that the only remedy available is the tax abatement procedures of G. L. c. 59, § 59. While it is true that, in general circumstances, a tax abatement is the proper and exclusive remedy available to a landowner aggrieved by excessive taxes, see *D'Errico* v. *Assessors of Woburn,* 384 Mass. 301, 306 (1981); *Sears, Roebuck & Co.* v. *Somerville,* 363 Mass. 756 (1973), in this case the eminent domain statute provides a separate remedy for tax relief.

case, the parties contested the valuation of the property for years before various tribunals.[12]

We conclude that the landowner whose property has been temporarily taken has the option of filing for an abatement each year, or paying real estate taxes throughout the course of the takings litigation and then receiving a reimbursement in the separate action for damages through the provisions of G. L. c. 79, §§ 12 and 35A. We remand to the Superior Court to award Lopes reimbursement for the real estate tax he paid, plus interest on that tax.

b. *Prejudgment interest.* Lopes next asserts that prejudgment interest should be added to the jury award, and that this interest should begin to run from the date he commenced the action for damages, December 28, 1990. Lopes failed to raise the interest issue in his initial appeal. Rather, three years later, on July 21, 1998, Lopes filed a motion under rule 60 to amend the Superior Court judgment to include prejudgment interest. We conclude that the motion was untimely and thus barred.

Rule 60 permits parties to amend final judgments. A rule 60 (a) motion can be raised at "any time" but is restricted to "[c]lerical mistakes in judgments . . . arising from oversight or omission." In this case, the failure to add prejudgment interest was a substantive and not a clerical error and, therefore, beyond the purview of rule 60 (a). The judge determined that prejudgment interest should be calculated by the jury as part of the damage award.[13] This determination was a legal judgment. "An award of prejudgment interest based upon the deliberate choice of the [trial] judge reflects an interpretation of law which,

---

[12]To put it another way, the tax issue here was not fully ripe until the property valuation question was resolved in the takings action. In *Moore* v. *United States*, 943 F. Supp. 603 (E.D. Va. 1996), the plaintiffs argued that they were entitled to take a deduction on their Federal tax return for an involuntary conversion loss stemming from the adoption of stricter Federal wetlands regulations. The United States District Court disallowed the deduction on the ground that the plaintiffs' claim was premature. *Id.* at 622. Because the plaintiffs had failed to follow the permitting process and pursue a takings lawsuit before claiming a deduction, the court held that the plaintiffs' claim was not ripe. *Id.* at 608-616.

[13]The judge instructed the jury: "The plaintiff . . . contends that an appropriate way to measure or place a value upon the loss of use of the property which he has sustained is to compute the return over fourteen years at a rate of interest of, he claims, 10.66 per cent, on the difference between the property's fair market value, without being subject to the ordinance that was found to be invalid and its fair market value with that restriction."

even if erroneous, cannot be corrected under Rule 60(a)." *Elias* v. *Ford Motor Co.*, 734 F.2d 463, 466 (1st Cir. 1984), and cases cited. Further, the Reporters' Notes accompanying Mass. R. Civ. P. 60 cite with approval a case "holding that failure to consider interest as an element of a judgment is a substantive matter beyond [r]ule 60 (a)." Reporters' Notes to Mass. R. Civ. P. 60 (a), Mass. Ann. Laws, Rules of Civil Procedure at 588 (Lexis 1997), citing *Stowers* v. *United States*, 191 F. Supp. 795 (N.D. Ga. 1961).

We recognize that previously we have referred to the calculation of prejudgment interest as a purely clerical matter. In *O'Malley* v. *O'Malley*, 419 Mass. 377, 379 (1995), we noted that "[t]he failure to include prejudgment interest in the judgment was a clerical mistake remediable by a rule 60 (a) motion." In *O'Malley*, there was "no indication" the judge had ever considered the issue of prejudgment interest. *Id.* at 380. Thus, the failure to consider interest was characterized as an omission that could be corrected under rule 60 (a). In this case, the record indicates the judge considered the interest question and decided that it was to be determined by the jury. His decision involved an undecided issue of Massachusetts law, namely whether the interest calculation provisions of the eminent domain statute apply to temporary regulatory takings. This is a substantive decision not governed by rule 60 (a).

Lopes is also precluded from bringing his motion under rule 60 (b). A rule 60 (b) motion can be used to correct errors of "mistake [or] inadvertence" and must be brought "not more than one year after the judgment . . . was entered or taken." We do not decide whether the decision to send the question of prejudgment interest to the jury can be addressed in a rule 60 (b) motion because Lopes filed his motion three years after the entry of final judgment. Thus, his motion considered under rule 60 (b) is time barred.

Furthermore, as a practical matter, Lopes has received the interest to which he was entitled. The interest provision of the eminent domain statute is applicable to temporary regulatory takings.[14] See *First English, supra* at 318. Therefore, the judge should have reserved the calculation of prejudgment interest for

---

[14]Other jurisdictions that have addressed the interest issue in the wake of the Supreme Court's decision in *First English* concur with the view we express today. In *Sintra, Inc.* v. *Seattle*, 131 Wash. 2d 640 (1997), the Supreme Court of Washington determined that interest should be added to a temporary

the clerk under G. L. c. 79, § 37, the eminent domain statute.[15] In *Verrochi* v. *Commonwealth*, 394 Mass. 633, 638 (1985), quoting *Barnes* v. *Peck*, 283 Mass. 618, 628 (1933), the court interpreted G. L. c. 79, § 37, as follows: "There is no dispute that the 'date as of which [damages] are assessed' is 'the date of the taking.' " See *Hargrove* v. *Minuteman Regional Vocational Tech. Sch. Dist.*, 394 Mass. 1010 (1985) (landowner whose property was taken in 1972 and who recovered damages in a 1983 judgment entitled to interest on damages from 1972); *Sawyer* v. *Boston*, 144 Mass. 470, 471 (1887) (upholding award of interest from time land taken). Thus, by statute prejudgment interest should be calculated by the clerk after the jury's determination of damages.

However, in this case Lopes requested that the judge instruct the jury to consider interest as part of the damage award.[16] The judge complied. See note 13, *supra.* Because the instruction was given at Lopes's request, he cannot be heard to complain

---

regulatory taking award. The *Sintra* court stated: "These rules [adding interest to the amount of the award] apply with equal force in temporary regulatory takings cases because a temporary regulatory taking is no different in kind from a permanent taking, in that compensation is required for the same reason it is required when the State takes property through conventional eminent domain or quick-take proceedings." *Id.* at 656-657. Likewise, the Court of Federal Claims has stated that "an award of just compensation for the temporary taking of property also entitles the owner to interest from the date of the taking to the date of compensation." *Heydt* v. *United States*, 38 Fed. Cl. 286, 314 (1997). See *Danish Vennerforning & Old Peoples Home* v. *State*, 205 Neb. 839, 842 (1980) (holding that prejudgment interest provision of eminent domain statute applies in inverse condemnation action); *Santos* v. *Government of Guam*, 415 F. Supp. 1, 2 (D. Guam 1973) (holding that in inverse condemnation action interest accrues on date complaint filed). But see *Fayetteville* v. *Stanberry*, 305 Ark. 210, 216 (1991) (refusing to award prejudgment interest in inverse condemnation suit on ground that it is speculative).

[15]"Damages under this chapter shall bear interest at the rate calculated pursuant to the provisions of this section from the date as of which they are assessed until paid, except that an award shall not bear interest after it is payable unless the body politic or corporate liable therefor fails upon demand to pay the same to the person entitled thereto. Interest shall be added by the clerk of the court to the damages expressed in a verdict, finding, or order for judgment. . . ." G. L. c. 79, § 37.

[16]The plaintiff among other instructions requested: "The proper method for calculating damages in this case is to compute the return that a prudent investor would have received over a [fourteen] year period at an interest rate which you find to be fair, having in mind that the expert witness has testified as to what a fair interest rate would be in his opinion."

that the interest was improperly calculated. To reach any other result would award Lopes double compensation for interest.

We reverse in part and remand to the Superior Court for an evidentiary hearing to determine the real estate taxes and interest upon those taxes due to Lopes under G. L. c. 79, §§ 12 and 35A. Lopes is not entitled to additional prejudgment interest and therefore, that part of the Superior Court judgment is affirmed.

*So ordered.*