## IRENE ROBERTS *vs.* WORCESTER REDEVELOPMENT AUTHORITY.

No. 98-P-2377.

Worcester. October 13, 2000. - December 24, 2001.

Present: PERRETTA, GILLERMAN, & PORADA, JJ.

*Practice, Civil,* Waiver, Correction of judgment. *Waiver. Judgment,* Correction of judgment, Interest. *Interest. Rules of Civil Procedure.*

At a hearing on a motion to increase the interest rate applicable to a judgment in an eminent domain case, brought by the plaintiff after appeal, affirmance, and entry of judgment after rescript, a Superior Court judge lacked authority to change the interest rate, either as a clerical matter under Mass.R. Civ.P. 60(a), or to avoid mistake or inadvertence under Mass.R.Civ.P. 60(b)(1), where the motion was based on a substantive claim that the Federal Constitution required application of a higher interest rate, and where the record demonstrated no justification for the plaintiff's failure timely to raise the constitutional issue. [457-462]

In an eminent domain case, a judgment bore interest under G. L. c. 79, § 37, from the date of the entry of the judgment to and including the last day of the month prior to the month in which the judgment was satisfied, and there was no requirement on the part of the prevailing party to demand payment in order to have the judgment bear interest. [462-464]

CIVIL ACTION commenced in the Superior Court Department on May 27, 1994.

Following review by this court, 44 Mass. App. Ct. 1105 (1997), a motion regarding interest on the judgment was heard by *Francis R. Fecteau,* J., and entry of an amended judgment was ordered by *Issac Borenstein,* J.

*Neal C. Tully* for the plaintiff.

*David A. Anderson* for the defendant.

PERRETTA, J. On this appeal from a Superior Court order, Irene Roberts argues primarily that she has been denied just compensation for her property taken by the Worcester Redevelopment Authority (WRA) by reason of the rate of interest ap-

plied to her jury award. The rate of interest in contention is that set forth in the second paragraph of G. L. c. 79, § 37, as inserted by St. 1993, c. 110, § 137, which reads as follows:

> "Interest required to be paid under [c. 79] shall be at an annual rate equal to the coupon issue yield equivalent, as determined by the United States Secretary of the Treasury, of the average accepted auction price for the last auction of 52-week United States Treasury bills settled immediately before the date of taking; provided, however, that such interest shall not exceed the rate of ten percent per annum."

She claims that as applied to her, § 37 is unconstitutional in that the legislatively mandated rate of interest results in a taking of her property without just compensation. The WRA argues that Roberts has waived the right to bring this issue before us. We vacate the order purporting to correct the judgment by reducing the rate of interest therein provided, thereby reinstating the original interest rate.

1. *Background.* A detailed recitation of the procedural history of the litigation is necessary to an understanding of the parties' arguments. On February 24, 1994, the WRA took, by eminent domain, real property owned by Roberts. Following a jury trial on her complaint for damages brought under G. L. c. 79, a final judgment entered on July 2, 1996. The judgment provides that Roberts was to be paid "the sum of $1,420,000.00[1] with interest thereon at the rate of 5.02% from February 24, 1994 in the sum of $167,913.40, as provided by law, and her costs of action."

Only the WRA appealed from that judgment. That appeal raised a single issue, viz., whether the Superior Court trial judge erred in admitting evidence of a sale of a certain parcel of land as a comparable sale. For reasons set out in an unpublished memorandum of decision, we affirmed that judgment, *Roberts* v. *Worcester Redev. Authy.*, 44 Mass. App. Ct. 1105 (1997), and, thereafter, on February 20, 1998, the Supreme Judicial Court

[1]This amount, $1,420,000, represents the difference between the value of the property on the date of the taking ($2,400,000, as found by the jury) and the amount of the pro tanto payment made to Roberts by the WRA, that is, $980,000.

denied the WRA's application for further appellate review. *Roberts* v. *Worcester Redev. Authy.*, 427 Mass. 1101 (1998). Seven days later, on February 27, 1998, a judgment after rescript entered. That judgment mirrored the original judgment of July 2, 1996, that is, the judgment entered after rescript provided for a 5.02 per cent interest rate.

About a month later, in March of 1998, disagreement on two fronts arose between Roberts and the WRA concerning the calculation of interest on the judgment. First, the parties argued about whether the rate of interest set out in the judgment, 5.02 per cent, was correct. Roberts insisted that a higher rate (no less than 7.69 per cent) should be applied. The WRA responded with the assertion, raised for the first time, that 3.74 per cent was the applicable and controlling rate mandated by § 37.[2] Second, the parties argued about the date through which interest was to accrue.

In the course of this dispute, the WRA, on May 11, 1998, sent Roberts a check in the amount of $1,640,447.16, in payment of the judgment, with interest thereon computed at the rate of 3.74 per cent, from the date of the taking, February 24, 1994, through the date of judgment after entry of the rescript, February 27, 1998. The check was accompanied by an explanatory letter in which the WRA stated that no further payment was required.[3] Roberts sought to put an end to the dispute by filing, on August 7, 1998, a motion labeled as a "motion for a judicial determination as to the proper rate and calculation of interest on the judgment." By this motion, which failed to identify any procedural rule under which it was being brought, Roberts sought payment of both prejudgment and postjudgment interest at the rate of 7.69 per cent, as well as an order, as stated

---

[2]Roberts and the WRA agree and we concur that if § 37 controls this case, an interest rate of 3.74 per cent was to be applied to the award of damages. The monthly auction of fifty-two-week Treasury bills that last preceded the taking of February 24, 1994, established a coupon issue yield equivalent of 3.74 per cent. See G. L. c. 79, § 37. See also the controlling table of interest rates as provided by 28 U.S.C.A. § 1961 (Supp. 2001).

[3]As put by the WRA in its letter: "This check constitutes payment of (1) the $1,420,000 judgment in the above action, (2) $124,840, the interest at 3.74% on $1,420,000 from February 24, 1994 [the date of the taking,] through July 2, 1996 [the date of the judgment] and (3) $95,607.16, the amount of interest at 3.74% on (1) and (2) ($1,544,840) from July 3, 1996 through February 27, 1998."

in § 37, that interest accrue "to and including the last day of the month prior to the month in which such judgment is satisfied." The motion was accompanied by an affidavit from an investment professional supporting the proposed applicable rate.

We have no transcript of the hearing held on Roberts's motion. The record before us shows only that a Superior Court judge endorsed Roberts's motion as follows: "To the extent that this motion seeks to correct the judgment, it is allowed but that the statutory interest rate, per G. L. c. 79, § 37, is to be applied (3.74%). In all other respects, this motion is denied." Roberts's appeal is from this order.

In their briefs and at oral argument before us, both Roberts and the WRA vigorously dispute whether the constitutional mandate of just compensation for a taking of property can require, in circumstances such as those presented in the instant case, that the rate of interest to be applied to the award of damages can be above the rate mandated by § 37. Roberts argues that she is entitled to a rate of 7.69 per cent, and the WRA insists that the rate set out in the order on the motion seeking to "correct" the judgment, 3.74 per cent, is, as matter of law, the rate to be applied and that Roberts waived her right to argue that a higher rate should be applied. We conclude that the right to protest the rate of interest set out in the judgment has been waived.[4]

2. *The applicable rate of interest.* It is the WRA's position on Roberts's appeal that she waived her right to claim that applica-

---

[4]Although we do not resolve this dispute, we think the parties' arguments are of sufficient significance that they at least be described. Roberts contends that because interest accruing between the date of the taking and the judgment is part of just compensation, § 37 must be read as setting a minimum interest rate. See *Verrochi* v. *Commonwealth*, 394 Mass. 633, 636-638 (1985), and cases therein cited. She contends that an upward departure from the minimum statutory rate is required in a situation such as hers, that is, a situation where, between the taking and the judgment, the interest rates for fifty-two-week Treasury bills (a conservative investment), averaged nearly two percentage points higher than the rate in effect at the time of the taking. There is some persuasive force to her argument that in circumstances such as hers, the proper rate of interest becomes a question of fact that must be determined by use of a "prudent investor" standard, with due regard for the high range of investment possibilities. See, e.g., *United States* v. *429.59 Acres of Land*, 612 F.2d 459, 464-465 (9th Cir. 1980); *Redevelopment Agency of Burbank* v. *Gilmore*, 38 Cal. 3d 790, 803-804 (1985), and cases therein cited.

tion of § 37 to the circumstances of her case results in a taking of her property without just compensation. This argument is based upon Roberts's failure to raise the issue at trial, see, e.g., *King* v. *State Rds. Commn. of the State Hy. Admn.*, 298 Md. 80, 93-94 (1983),[5] or to seek timely to amend the 1996 judgment or to obtain relief therefrom. See Mass.R.Civ.P. 59, 365 Mass. 827 (1974); Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974). Roberts responded at oral argument that the WRA waived the right to argue waiver. Based upon the briefs before us, we conclude that the WRA adequately raised and argued the issue of whether Roberts can now challenge the rate of interest set out in the 1996 judgment. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

In taking up the issue of waiver, we think the pivotal and threshold question is whether, after appeal, affirmance, and entry of the judgment after rescript, the Superior Court judge lacked the authority to act upon the motion brought by Roberts. Neither the parties' briefs or the record before us identify or discuss the procedural basis upon which Roberts, in 1998, brought her "motion for a judicial determination as to the proper rate and calculation of interest on the [1996] judgment."[6]

We think that the Superior Court judge viewed his action as one authorized by Mass.R.Civ.P. 60(a), 365 Mass. 828 (1974),

---

The WRA contends that administrative efficiency and the need for uniform treatment of condemnees militate against a case-by-case determination of an applicable rate of interest. See *Tucson Airport Authy.* v. *Freilich*, 136 Ariz. 280, 283 (1983); *In re Incorporated Village of Hempstead*, 33 A.D.2d 1036, 1036-1037 (N.Y. 1970). Further, the WRA argues that the difference between the statutory rate of interest and the yield on prudent market investments in general is not so great as to be of constitutional significance. See *Tucson Airport Authy.* v. *Freilich, supra*; *In re City of New York*, 58 N.Y.2d 532, 537-538 (1983).

[5]The court there held that if a condemnee contends that the statutory interest rate does not comply with the mandate of the Fifth Amendment that there must be just compensation for any taking of a person's property, the condemnee must raise the issue before the jury in order to allow them to determine what rate of interest constitutes just compensation.

[6]There is nothing in the record that explains how the 5.02 per cent figure found its way into the judgment. At oral argument, Roberts portrayed it as an error by the clerk in reading a table of Treasury bill auction rates applicable to § 37. See note 3, *supra*. The explanation is somewhat plausible in that the auction rate on April 28, 1994, the third auction after that identified in notes 2 and 3, *supra*, was 5.02 per cent. However, and as will be explained *infra*,

that is, authority to correct a clerical mistake. Our view is based upon the wording of the endorsement on Roberts' motion — "[t]o the extent that this motion seeks to correct the judgment, it is allowed" — as well as the proximity of the erroneous 5.02 per cent figure to the correct rate of 3.74 per cent in the lengthy table of Treasury bill auction rates. See notes 2, 3, and 6, *supra.*

Even if we assume that the 5.02 per cent rate was mistakenly selected by a clerk on the basis of a misreading of the Treasury bill auction rate table, a mistake that, at first blush, might be considered a clerical mistake within the meaning of rule 60(a), we nonetheless conclude that upon a closer scrutiny of the circumstances presented, the Superior Court judge lacked authority to correct the mistake that Roberts suggests on this appeal is "clerical." See note 6, *supra.* As explained in *O'Malley* v. *O'Malley,* 419 Mass. 377, 379-380 (1995), where the court held that the clerk's failure to include in the judgment prejudgment interest, awarded as matter of right rather than discretion under G. L. c. 231, § 6C, was subject to correction:

> "Rule 60(a) permits the correction of clerical mistakes in judgments at any time on motion of a party. The first issue is whether, assuming that there was a mistake, that mistake was a clerical one. If it was not clerical, [the plaintiff] could seek relief only by a timely motion for relief under Mass. R. Civ. P. 60(b), 365 Mass. 828 (1974), by a timely motion to amend the judgment under Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974), or by a timely appeal from the judgment, none of which courses [the plaintiff] pursued.
>
> "The failure to include prejudgment interest in the judgment was a clerical mistake remediable by a rule 60(a) motion. We have generally viewed mistakes in the computation of interest as clerical."

There is a significant difference between *O'Malley* and the issue before us. Roberts's claim cannot be viewed as one based upon a clerical mistake. Rather, she sought application of an interest rate higher than that set out in the judgment (5.02 per

whether the clerk misread the "52-week T-Bill rate table" is not pertinent to our conclusion.

cent) on the basis of the substantive claim that the Federal Constitution required payment of an interest rate even higher than the rate erroneously computed under § 37.[7] Her motion was accompanied by a memorandum of law as well as various exhibits and affidavits, all to the effect that the appropriate and applicable rate of interest was 7.69 per cent. Applying the law to the circumstances before us, we conclude that the Superior Court judge had no authority under rule 60(a) to correct the judgment in the manner requested in her motion. See *Elias* v. *Ford Motor Co.*, 734 F.2d 463 (1st Cir. 1984); *Frank D. Wayne Assocs., Inc.* v. *Lussier*, 394 Mass. 619, 621-622 (1985); *Lopes* v. *Peabody*, 430 Mass. 305, 314 (1999).

Nor could the Superior Court judge correct the judgment pursuant to Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974).[8] As noted in *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Commn.*, 394 Mass. 233, 236 (1985), rule 60 does not "provide an avenue for challenging supposed legal errors, nor for obtaining relief from errors which are readily correctible on appeal." See *Elias* v. *Ford Motor Co.*, 734 F.2d at 465 ("Since our affirmance encompassed the entire judgment, including the award of prejudgment interest, the district court lacked power to modify the judgment to increase the rate of prejudgment interest"); *Gulf Coast Bldg. & Supply Co.* v. *International Bhd. of Elec. Wkrs., Local No. 480*, 460 F.2d 105, 108 (5th Cir. 1972) ("The entire judgment was presented to this court and all issues therein were expressly or impliedly disposed of on the appeal"); *Wheatley* v. *Planning Bd. of Hingham*, 10 Mass. App. Ct. 884, 885 (1980) ("[T]he judge was bound to enter a final judgment that conformed to our rescript").

Even assuming, however, that a rule 60(b) motion was not foreclosed on the basis of the above-cited authorities, we would conclude that none of its six subparagraphs were available to Roberts. Five of the six grounds for the motion warrant instant rejection: (b)(2), new evidence not discoverable through due

---

[7]As earlier noted, the WRA's appeal raised no issue about the interest rate provided for in the judgment, and Roberts did not cross-appeal, presumably because the rate set out in the judgment was higher than what she was then entitled to under G. L. c. 79, § 37.

[8]At oral argument, Roberts remarked in passing that should we view her motion as one brought under rule 60(b), the motion was timely brought.

diligence; (b)(3), fraud, misrepresentation, misconduct; (b)(4), void judgment; (b)(5), satisfaction, release, discharge, reversal or vacating of prior judgment, inequity of prospective application; (b)(6), catch-all provision reserved for extraordinary circumstances which are foreclosed by a party's failure to raise the issue on appeal (see *Bromfield* v. *Commonwealth*, 400 Mass. 254, 257 [1987]).

We are left with the provision of rule 60(b)(1), which allows for the grant of relief from a judgment because of "mistake, inadvertence, surprise, or excusable neglect." However, we are here bound by *Cullen Enterprises, Inc.* v. *Massachusetts Property Ins. Underwriting Assn.*, 399 Mass. 886, 894 (1987), wherein the court stated as follows:

> "In a motion under subsection (1) of rule 60(b), the moving party bears the burden of justifying the motion, and 'must make some showing of why he was justified in failing to avoid mistake or inadvertence.' . . . Relief is not justified for 'any kind of garden-variety oversight.' Instead, '[t]he inadvertence, mistake or surprise as well as neglect must be excusable in order to give the court power to set aside the judgment.' " (Citations omitted.)

Even were we to assume that the interest rate applied to the judgment (5.02 per cent) resulted from a "mistake" within the comprehension of rule 60(b)(1), the record before us establishes that the facts and law relevant to the issue raised on this appeal were known or knowable by both Roberts and the WRA on July 2, 1996, the date upon which judgment entered. Further, there is nothing in the record before us that remotely suggests any justification for Roberts's failure to raise the constitutional issue by filing a cross appeal from the 1996 judgment.[9] Moreover, even if grounds for relief under rule 60(b)(1) existed, the request for such relief was brought over two years after the

---

[9]Indeed, Roberts had a sound practical reason for not filing a cross appeal. Putting aside the argument she now raises, that § 37 is unconstitutional in its application to her, the so-called mistake in the judgment worked in her favor. See note 7, *supra*.

original judgment was entered and was, therefore, untimely.[10]

No matter the label attached to the motion in issue, the Superior Court judge lacked authority to change the interest rate provided for in both the judgment and the judgment after rescript, that is, 5.02 per cent. The order amending the judgment entered after rescript must be vacated.

3. *The interest accrual period.* Having determined the applicable rate of interest to be paid Roberts on the judgment, we turn to her second claim, that she is entitled to interest from the date of the taking, February 24, 1994, to the date of the judgment and then on the judgment from the date of the judgment to the last day of the month prior to the month in which payment is made. Both the judgment and the judgment after rescript provide for interest in the amount of $167,913.40, that is, interest at the rate of 5.02 per cent on the sum of $1,420,000 (the difference between the value of the property on the date of the taking as found by the jury and the amount of the WRA's pro tanto award, see note 1, *supra*). Put another way, the judgment after rescript makes no provision for interest subsequent to July 2, 1996, the date of judgment.

Once the applicable rate of interest is determined, the actual amount due is computed in accordance with the first paragraph of § 37, which provides:

> "[1] Damages under [chapter 79] shall bear interest at the rate calculated pursuant to the provisions of this section from the date as of which they are assessed until paid, except that *an award shall not bear interest after it is payable unless the body politic or corporate liable therefor fails upon demand* to pay the same to the person entitled thereto. [2] Interest shall be added by the clerk of the court to the damages expressed in a *verdict, finding, or*

---

[10]Roberts seems to contend that should we conclude that she would be entitled to relief pursuant to rule 60(b)(1), we should also hold that the motion was timely because she brought it within one year of the judgment *after* rescript. Where the WRA's appeal resulted in an affirmance of the judgment without any change, substantive or otherwise, the "date of judgment is the date judgment originally entered in the trial court." *Peak* v. *Massachusetts Bay Transit Authy.,* 20 Mass. App. Ct. 726, 729 (1985). See *Patry* v. *Liberty Mobilehome Sales, Inc.,* 394 Mass. 270, 273 (1985).

*order for judgment.* [3] A *judgment*, whether against the commonwealth or any other body politic or corporate, shall bear interest at the rate calculated pursuant to the provisions of this section from the date of the entry of such judgment to and including the last day of the month prior to the month in which such judgment is satisfied, except that a judgment against the commonwealth shall not bear interest if it is satisfied within thirty days of such entry." (Emphasis added.)

Relying upon its payment to Roberts of May 11, 1998, in purported satisfaction of the judgment plus interest thereon computed at the rate of 3.74 per cent from the date of the taking through the date of the judgment after rescript, see note 2, *supra*, the WRA counters with the argument that Roberts is not entitled to receive interest after that date, February 27, 1998. It claims that subsequent to the judgment after rescript, Roberts agreed that the WRA would be under no obligation to pay either the judgment or the interest thereon until thirty days after she proposed a total sum of interest due her. The WRA argues that because Roberts never proposed a total amount of interest due her prior to the date of the filing of the motion here in issue (August 7, 1998), it was under no obligation to make payment prior to that date. The argument continues: even assuming that a letter from Roberts, dated May 6, 1998, were to be construed as a demand for payment, the WRA promptly paid the amount of the judgment with interest thereon (at the rate of 3.74 per cent) on May 11, 1998.

Robert denies the existence of any agreement on her part to toll interest. Our review of the documents (letters between the WRA and Roberts) submitted by the WRA as attachments to its memorandum of law in opposition to Roberts's motion and put before us in the record appendix leads us to conclude that the contents of the documentary record fall far short of showing any agreement by Roberts that interest would be tolled. To the contrary, we think that those letters, construed in light of all the circumstances presented, show that after judgment on the rescript, Roberts sought payment of her damages plus interest thereon computed at a rate higher than that provided for in the judgment and that the WRA responded to Roberts's request

with a payment in an amount that included interest calculated at a rate less than that provided for by the judgment after rescript.

Even were we to conclude that Roberts failed to make a demand for payment after judgment on the rescript, such a conclusion would gain the WRA nothing. As we read the demand requirement set out in the first sentence of the first paragraph of § 37 (relied upon by the WRA), it pertains to interest on an "award," whereas the third sentence (relied upon by Roberts) speaks to the circumstances of the present case, that is, interest on a "judgment."

Although the words "judgment" and "award" might equate in common parlance, we conclude that these terms are not synonymous in the context of the specialized statutory setting with which we are concerned. As we read G. L. c. 79, a "judgment" reflects a judicial assessment of the compensation due a condemnee, see §§ 14 and 22, while the term "award" is most often used in c. 79 in seeming reference to the decision by the appropriate body politic as to what it determines is voluntarily to be paid the property owner. See G. L. c. 79, §§ 6, 7, 7A, 7C, 7D, 7H, 9, 10, 11, 17, 18, 21, 32, 33, 36, 38, 41, 43, and 44A. See *R.H. White Realty Co.* v. *Boston Redev. Authy.*, 371 Mass. 452, 453-454 (1976).

4. *Interest computation on remand.* For those reasons set out in detail in part two of this opinion, *supra*, this matter must be remanded for a recalculation of the interest due and owing Roberts on the judgment. In the hope of avoiding any confusion on remand or the need for further litigation, we give guidance.

First, as set out in the original judgment, the WRA owed $1,420,000 (the verdict amount less the pro tanto payment, see note 1, *supra*) plus interest on that judgment in the amount of $167,913.40 (accrued at the rate of 5.02 per cent from date of taking to date of judgment, July 2, 1996). These two amounts are to be totaled to arrive at the principal amount of the judgment. Interest at the rate of 5.02 per cent[11] is then to be added, payable from July 3, 1996 (first day after date of judg-

---

[11]In a footnote in its brief, the WRA argues that postjudgment interest must accrue at the rate of 3.74 per cent. We are not required to address an argument raised in a footnote. See *Commonwealth* v. *Lydon*, 413 Mass. 309, 317-318 (1992). Nonetheless, we note that as we read the first paragraph of § 37, the

ment) through May 11, 1998 (date of partial payment by WRA), to that amount. The payment made by the WRA on May 11, 1998, ($1,640,447.16) is then to be credited as of that date, first, against postjudgment interest and then against the principal amount of the judgment. Interest on any remaining amount due after application of the credit is then to accrue at the rate of 5.02 per cent, from May 12, 1998, up to and including the last day of the month prior to that in which the balance is paid in full.

5. *Conclusion.* The order purporting to correct the judgment is vacated, and the judgment and the judgment after rescript are to stand as entered. The matter is remanded for computation of the amount of interest due and owing Roberts on her damages in accordance with this opinion.

*So ordered.*

---

statutory design is to provide an equal rate of prejudgment and postjudgment interest. In this case, the applicable rate found to be controlling, 5.02 per cent, went without challenge and, for the reasons set out in part two of this opinion, *supra*, controls.