# M.B. Claff, Inc. *vs.* Massachusetts Bay Transportation Authority.

No. 00-P-1679.

Plymouth. April 16, 2003. - October 17, 2003.

Present: Gelinas, Cowin, & Berry, JJ.

Further appellate review granted, 440 Mass. 1108 (2003).

*Judgment,* Interest. *Interest. Eminent Domain,* Interest. *Constitutional Law,* Eminent domain, Taking of property.

This court concluded that the statutory interest rate set forth in G. L. c. 79, § 37, does not provide adequate compensation for eminent domain takings in all cases, and that if an owner whose property has been taken for public use does not, by virtue of operation of § 37, receive during the period between taking and payment interest reasonably similar to what the owner could have earned had payment been made at the time of taking, there has been a taking without just compensation [672-674]; moreover, to establish an interest rate that satisfies constitutional requirements, the plaintiff in a civil action for just compensation for property taken by eminent domain must present to a fact finder evidence that will demonstrate what interest rate will reflect a reasonable rate of return during the period in question, and must bear the burden of proving at trial what that interest should be, and of making a timely disclosure that it intends to contest the constitutional adequacy of the statutory interest rate [674-677].

In a civil action brought by the plaintiff property owner for assessment of damages under G. L. c. 79, § 37, for property that the defendant had taken through eminent domain, the plaintiff failed to prove an element of its case, where the plaintiff did not raise its claim that the annual interest rate generated by the statute was constitutionally inadequate until after the verdict had been rendered. [677-678]

Civil action commenced in the Superior Court Department on February 14, 1996.

The case was tried before *John J. O'Brien,* J., and a motion for relief from judgment and for interest was heard by *David A. McLaughlin,* J.

*Kevin P. Sweeney* for the plaintiff.

*Richard K. Jeffery, Jr.,* for the defendant.

COWIN, J. We address the question of the validity and implementation of G. L. c. 79, § 37,[1] providing for the payment of interest on judgments in eminent domain cases in light of those provisions of the United States Constitution and the Massachusetts Declaration of Rights[2] that require the payment of just compensation when private property is taken for public use. While we have recently had occasion to consider the subject, see *Roberts* v. *Worcester Redev. Authy.*, 53 Mass. App. Ct. 454 (2001), the posture of that case did not invite exploration of the merits. We deal with them now.

That an appropriate payment of interest during the period between a taking and payment by the government therefor is an element of "just compensation" is firmly established. *Seaboard Air Line Ry.* v. *United States*, 261 U.S. 299, 306 (1923). We conclude that G. L. c. 79, § 37, to the extent that it fixes an interest rate at the date of taking that is substantially lower than

---

[1]General Laws c. 79, § 37, as amended by St. 1993, § 136, provides in relevant part:

> "Damages under this chapter shall bear interest at the rate calculated pursuant to the provisions of this section from the date as of which they are assessed until paid. . . . A judgment . . . shall bear interest at the rate calculated pursuant to the provisions of this section from the date of the entry of such judgment to and including the last day of the month prior to the month in which such judgment is satisfied, except that a judgment against the commonwealth shall not bear interest if it is satisfied within thirty days of such entry. .

> "Interest required to be paid under this chapter shall be at an annual rate equal to the coupon issue yield equivalent, as determined by the United States Secretary of the Treasury, of the average accepted auction price for the last auction of 52-week United States Treasury bills settled immediately before the date of taking; provided, however, that such interest shall not exceed the rate of ten percent per annum."

[2]The Fifth Amendment to the United States Constitution provides in part: "[N]or shall private property be taken for public use, without just compensation." The amendment is applicable to the States by means of the Fourteenth Amendment. See, e.g., *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith*, 449 U.S. 155, 160 (1980). Article 10 of the Massachusetts Declaration of Rights provides: "And whenever the public exigencies require, that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor." Article 10 "affords protection parallel to that of the United States [Constitution]." *Bromfield* v. *Treasurer & Recr. Gen.*, 390 Mass. 665, 668 (1983).

market rates that prevail before the property owner is compensated, deprives that property owner of just compensation. However, this principle is not self-executing. Because a proper level of interest is an element of the compensation due the property owner, the burden of establishing what the interest should be must be shouldered by that owner. The plaintiff not having proved this portion of the case, we sustain the decision of the Superior Court judge to award only the statutory rate of interest.

1. *Background.* The material facts and relevant prior proceedings are not disputed. On December 30, 1993, the defendant recorded an order of taking of a portion of the plaintiff's real property in Brockton. The defendant made a pro tanto payment of $80,000, and the plaintiff, dissatisfied with the pro tanto payment, on February 14, 1996, commenced a timely action for assessment of damages under G. L. c. 79. The plaintiff's complaint contained no allegation that the statutory rate of interest calculable under G. L. c. 79, § 37, was inadequate, and there was no evidence or argument at trial addressed to what that interest rate should be. The case proceeded to trial, and the plaintiff on June 16, 1999, obtained a jury verdict in the amount of $700,000.

On June 24, 1999, the parties filed a pro tanto stipulation reflecting that the plaintiff had already received $80,000. On July 7, 1999, judgment for the plaintiff in the amount of $620,000 was entered. To this judgment, the clerk added interest in the amount of $252,552.32, thereby committing two mistakes (but equitably apportioning the mistakes one to each side). The amount represented a calculation of interest at twelve percent per annum, rather than at the rate called for by G. L. c. 79, § 37, which the parties agree would have been 3.61 percent per annum. In addition, interest was accrued only from February 14, 1996, the date of commencement of the action, rather than from December 30, 1993, the date of taking. On August 4, 1999, the defendant filed a notice of appeal with respect to the interest calculation. The plaintiff did not appeal. The defendant's appeal was never entered in this court.

On July 28, 2000, the plaintiff filed a "motion for relief from judgment to assess interest in eminent domain action at 7% or, in the alternative, for entry of judgment at statutory rate of

3.61% and for order to issue execution." In a separate motion, the plaintiff sought dismissal of the defendant's still unentered appeal on the ground that the granting of the relief requested by the plaintiff in the motion regarding determination of interest would render that appeal moot. The defendant assented to that portion of the motion seeking 3.61 percent interest from the date of taking, but objected to the awarding of interest at a higher rate. On August 8, 2000, the judge ordered that interest be added to the judgment at a rate of 3.61 percent from the date of taking, denied the plaintiff's request for a higher interest rate, and dismissed the defendant's appeal as moot. An amended judgment entered. The plaintiff appealed from that portion of the amended judgment limiting the interest rate to 3.61 percent. The defendant satisfied the undisputed portion of the judgment by means of a payment in December, 2000.

It is not disputed that throughout the period between the date of taking and the entry of the amended judgment, then from the amended judgment to the date of payment, coupon issue yields on fifty-two week United States Treasury bills averaged at a rate higher than 3.61 percent. In connection with its motion seeking a seven percent interest award, the plaintiff presented to the judge documents showing that those yields fluctuated from a low of 3.61 percent to a high of 7.34 percent.[3]

2. *Just compensation.* "Persons whose property is taken for public use by a governmental entity are constitutionally entitled to just or reasonable compensation for their property." *Verrochi* v. *Commonwealth*, 394 Mass. 633, 636 (1985). As is frequently the case, this accepted principle is accompanied by difficulties in its application. One such difficulty arises from the practical reality that the owner and the government frequently dispute the amount that will satisfy the requirement of "just compensation." This results in often protracted delays during which the owner no longer has use of his property but has yet to receive full pay-

---

[3]On appeal, the plaintiff asks that we take judicial notice of various government and industry publications showing interest rates payable on other investments, such as three-year Treasury notes and private obligations. In light of our disposition of this case, it is unnecessary to address whether judicial notice of the contents of such publications is appropriate for this purpose.

ment therefor.[4] The delay in this case of approximately seven years between the date of taking and payment by the government of the judgment assessing damages is not unique.

A delay in receiving payment obviously reduces the value of that payment to the owner. Accordingly, the right of the owner to receive interest to compensate him for the loss of use of the funds is an aspect of his right to receive just compensation. "Where the [government] condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking . . . . Interest at a proper rate is a good measure by which to ascertain the amount so to be added." See *Seaboard Air Line Ry.* v. *United States*, 261 U.S. at 306; *Woodworth* v. *Commonwealth*, 353 Mass. 229, 232 (1967).

The Legislature may, with G. L. c. 79, § 37, being an example, provide by statute for the payment of interest. However, it is against the backdrop of applicable constitutional principles that the Legislature acts. The rate selected by the Legislature may, or may not, be sufficient to satisfy the constitutional requirement of just compensation. If not, the Legislature cannot constitutionally have the last word on the subject. In this regard, treatment of the subject differs substantially from treatment of ordinary tort or contract damages, where the Supreme Judicial Court has characterized interest as "a matter of legislative grace." *Verrochi* v. *Commonwealth*, 394 Mass. at 636. By contrast, interest on eminent domain judgments is "a matter of constitutional right." *Ibid.* While a statutory interest rate may be applied if "reasonable and judicially acceptable," see *Miller* v. *United States*, 620 F.2d 812, 837 (Ct. Cl. 1980), "because interest at a 'proper rate' is an element of just compensation, the determination of the proper rate of interest is ultimately a judicial function." *Verrochi, supra* at 638. "It does not rest with Congress [or a State legislature] to say what compensation shall be paid, or even what shall be the rule of compensation." *Miller, supra.*

This does not mean that the respective Constitutions mandate

---

[4]The owner normally receives a pro tanto payment at the time of the taking, but, as in this case, that payment is often substantially less than what is ultimately determined to be the fair market value of the property.

that statutory interest rates be ignored. While a statutory rate cannot act as a ceiling on interest where the constitutional right to just compensation otherwise requires, the statute does reflect the will of the legislative branch that the owner receive no less than the stated amount. Thus, the statute operates as a floor. See *United States* v. *Blankinship*, 543 F.2d 1272, 1276 (9th Cir. 1976) (applying the Declaration of Taking Act, 40 U.S.C. § 258a [1970]) ("No lesser rate than 6 percent is consistent with the intent of Congress; a rate no greater than 6 percent in some instances will contravene the Fifth Amendment"). It is our responsibility as judges to heed both the requirements of the Constitution and the preferences of the Legislature to the extent that both can be accommodated.

Applying the above principles, we conclude that the statutory interest rate set forth in G. L. c. 79, § 37, will not provide adequate compensation in all cases. If an owner whose property has been taken for public use does not, by virtue of operation of the applicable interest statute, receive during the period between taking and payment interest reasonably similar to what the owner could have earned had payment been made at the time of taking, there has been a taking without just compensation. The question then becomes how such a rate shall be determined.

3. *Determination of the interest rate.* Establishment of an interest rate that satisfies constitutional requirements is based on findings of fact. *United States* v. *100 Acres of Land*, 468 F.2d 1261, 1269 (9th Cir. 1972), cert. denied, 414 U.S. 822, 864 (1973); *United States* v. *429.59 Acres of Land*, 612 F.2d 459, 464 (9th Cir. 1980). It follows, therefore, that evidence must be presented to a fact finder that will demonstrate what interest rate will reflect a reasonable rate of return during the period in question.[5] We do not attempt to impose on trial judges what the components of a reasonable rate may be. Various considerations have been suggested. See, e.g., *United States* v. *Blankinship*, 543 F.2d at 1274, 1276, suggesting that a lower rate on obligations of the United States may be reasonable for purposes of determining just compensation because the risk to the inves-

[5]The twin questions whether the statutory rate is constitutionally adequate and, if not, what rate will be adequate will, in most cases, effectively be answered by the same evidence.

tor is less. But contrast the decision by the same court four years later in *United States* v. *429.59 Acres of Land,* 612 F.2d at 464-465, that seems to advocate for application of the "prudent investor" doctrine, as well as indicating that compounding of interest may be appropriate. The trial courts are the best places in which to work out these complexities so long as the guiding standard is that the owner is placed "in as good position pecuniarily as he would have occupied if his property had not been taken." *United States* v. *Miller,* 317 U.S. 369, 373 (1943).[6]

While we deem it unwise to attempt to dictate what elements make an interest rate reasonable, we conclude that evidence of what that rate should be must be presented at trial as part of the plaintiff's proof of just compensation. We have held that the plaintiff may not seek to establish the rate following an appeal and judgment after rescript. See *Roberts* v. *Worcester Redev. Authy., supra* at 462. Nor do we believe that the question is appropriately litigated posttrial as part of the process of formulating a judgment.

Because adequate interest is a component of just compensation, the plaintiff has the burden of proving at trial what that interest should be.[7] In this regard, that element of the claim does not differ from that portion of the claim in which the plaintiff must establish the fair market value of the property taken. As we have indicated, the right to interest, as the right to compensation in general, derives from the Constitution, not from the choice of the Legislature. It follows that the amount thereof must be proved. That must take place at the trial of the case, with an opportunity for the fact finder to decide. "[A] determination as to what is a proper rate of interest has many variables based on economic and business considerations which may vary within each factual situation. It seems clear that a

---

[6]It is not necessarily the case that the Legislature cannot choose to deal with the question by statute rather than leaving it to case-by-case adjudication. It strikes us, however, that it cannot effectively do so by fixing an immutable rate at the date of taking. Whether a statute using a fluctuating rate that reflects market conditions between the date of taking and the entry of judgment, with an average then used for postjudgment interest, would be a desirable expedient we leave to legislative consideration.

[7]The defendant is, of course, also entitled to present evidence on the issue of the interest rate.

determination as to the proper rate of interest is a factual question and should be determined by the trier of fact." See *United States* v. *100 Acres of Land*, 468 F.2d at 1269.

As with any issue on which a party has the burden to go forward, a plaintiff must make a timely disclosure that it intends to contest the constitutional adequacy of the statutory interest rate. This may take place in the pleadings or, with the permission of the judge, at a subsequent stage of the litigation; there must, however, be adequate notice to the defendant that there will be a contest on the issue. The judge, of course, may exercise his normal discretionary powers to determine that the issue is genuine and that the plaintiff can make a sufficient showing to justify presentation of evidence on the subject. Orders in limine or partial summary judgments are available in the event that a plaintiff is unable to demonstrate that it has sufficient evidence to warrant a finding in its favor.

Cases advanced by the defendant do not support the proposition that the amount of interest can be litigated postverdict. *Verrochi* v. *Commonwealth*, 394 Mass. at 636-637, decided that an amendment to G. L. c. 79, § 37, then increasing the interest rate from six percent to ten percent, see St. 1981, c. 800, § 3, must be applied retroactively to the date of taking. The only issue before the court was the time of application of a fixed statutory rate. There was no challenge to the ten percent rate as confiscatory, and all parties, as well as the Legislature, apparently considered the six percent rate inadequate (at least if applied to the date of payment). There was no consideration of proof of any other rate. The decisions in *Holyhood Cemetery Assn.* v. *Boston*, 394 Mass. 1011, 1012 (1985), and *Salem Country Club, Inc.* v. *Peabody Redev. Authy.*, 21 Mass. App. Ct. 433, 437-438 (1986), relied on *Verrochi* and are similarly limited in their effect.

The defendant points to the burden of proving what reasonable interest should be, as well as to the possibility of conflicting results, as reasons why the present statutory interest rate should simply be applied without further inquiry. We find neither concern convincing. By the time of trial, interest rates on various invest-

ments from the date of taking forward will be an easily accessed matter of record, and a presentation as to what rate or combination of rates is to be used should not be difficult. Indeed, it is not unrealistic to expect that such evidence, if not the rate itself, may be the subject of stipulation. That different parties may present different evidence or argument, thereby inducing fact finders to render different findings regarding what constitutes a reasonable rate for a given period, is an occupational hazard of our system. We know that similar circumstances may generate different results depending on how the cases are tried or how the fact finders respond, and the system survives. When all is said and done, we agree with the plaintiff that administrative efficiency and similarity of result cannot trump the constitutional mandate that there be just compensation for property taken for public use.[8]

4. *The present interest claim.* We conclude that the plaintiff could have, but did not, raise its claim that an annual interest rate of 3.61 percent was confiscatory in a timely fashion. By the time of trial, approximately five and one-half years after the date of taking, the plaintiff knew whether it had a case to make that the rate generated by G. L. c. 79, § 37, was constitutionally inadequate. Introduction of the subject for the first time postverdict constituted a failure of proof of an element of the case. Furthermore, even had it been proper to present the issue separately to the judge rather than as part of the case to the jury, the judge was deprived of the kind of evidence that would have been useful in making a decision. "[The plaintiff] should have made the interest question an issue at trial instead of waiting until after the just compensation question had been decided by the jury. [The plaintiff] had its day in court to prove just compensation and to present all its evidence affecting that determination. It is not entitled to another trial to prove additional elements of just compensation which it could have

---

[8]The defendant suggests that the difference between a constitutional rate and the rate established by G. L. c. 79, § 37, may be de minimis. Given the figures offered by the plaintiff, that would not appear to be so. In a case in which differences are in fact insignificant, "just compensation" does not require de minimis adjustments.

presented during the original trial." *United States* v. *100 Acres of Land*, 468 F.2d at 1270.[9]

*Amended judgment affirmed.*

---

[9]Because we have determined that a failure to raise the question at trial constitutes a waiver of this aspect of the plaintiff's claim for just compensation, it is unnecessary to address the parties' arguments whether the plaintiff should have appealed with respect to the interest award.