## M.B. Claff, Inc. *vs.* Massachusetts Bay Transportation Authority.

Plymouth. March 5, 2004. - May 7, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Waiver. Judgment,* Interest, Relief from judgment. *Interest. Eminent Domain,* Interest. *Constitutional Law,* Eminent domain, Taking of property.

This court concluded that a motion under Mass. R. Civ. P. 60 (a), 365 Mass. 828 (1974), was not an appropriate avenue to raise a claim that the interest rate established in G. L. c. 79, § 37, for judgments in eminent domain cases was unconstitutional as applied, because the motion raised a substantive issue of disputed fact; moreover, the alternative styling of that motion under rule 60 (b) (6) articulated no extraordinary circumstance justifying relief. [599-604]

Civil action commenced in the Superior Court Department on February 14, 1996.

The case was tried before *John J. O'Brien,* J., and a motion for relief from judgment and for interest was heard by *David A. McLaughlin,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kevin P. Sweeney* for the plaintiff.

*Richard K. Jeffery* for the defendant.

*Thomas F. Reilly,* Attorney General, & *Jason B. Barshak,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

Sosman, J. In this appeal, we have been asked to rule that the statute setting the interest rate for judgments in eminent domain cases, G. L. c. 79, § 37,[1] is unconstitutional because, as applied to this plaintiff, the rate that it prescribes is so low as to be

---

[1]General Laws c. 79, § 37, provides in relevant part: "Damages under this chapter shall bear interest at the rate calculated pursuant to the provisions of this section from the date as of which they are assessed until paid . . . . Inter-

confiscatory pursuant to the Fifth Amendment to the United States Constitution (owner entitled to "just compensation" when property taken for public use) and art. 10 of the Massachusetts Declaration of Rights (owner entitled to "reasonable compensation"). The plaintiff's request for utilization of a rate of interest higher than that provided by statute was first made in a motion pursuant to Mass. R. Civ. P. 60 (a) and (b) (6), 365 Mass. 828 (1974), filed almost thirteen months after the entry of judgment. The Appeals Court held that the plaintiff had waived its constitutional claim to higher interest when it failed to present evidence on the issue at trial. *M.B. Claff, Inc.* v. *Massachusetts Bay Transp. Auth.*, 59 Mass. App. Ct. 669 (2003). We granted the plaintiff's application for further appellate review. For the following reasons, we conclude that there was no error in the judge's denial of the plaintiff's rule 60 motion raising the issue, and we therefore affirm the judgment.

1. *Background.* By order of taking dated December 13, 1993, and recorded on December 30, 1993, the Massachusetts Bay Transportation Authority (MBTA) effected a taking of real property owned by the plaintiff M.B. Claff, Inc. (Claff). Dissatisfied with the MBTA's pro tanto payment of $80,000, Claff filed an action for compensation on February 14, 1996. See G. L. c. 79, § 14. Claff's complaint did not contain any allegation that the rate of interest set by G. L. c. 79, § 37, was confiscatory.[2] Nor did Claff raise this issue at any time prior to

---

est shall be added by the clerk of the court to the damages expressed in a verdict, finding, or order for judgment. . . .

"Interest required to be paid under this chapter shall be at an annual rate equal to the coupon issue yield equivalent, as determined by the United States Secretary of the Treasury, of the average accepted auction price for the last auction of 52-week United States Treasury bills settled immediately before the date of taking; provided, however, that such interest shall not exceed the rate of ten percent per annum."

[2]The statute fixes the interest rate as of the date of taking. For a taking in December, 1993, the statutory formula prescribed a rate of 3.61 per cent per annum. See 28 U.S.C. § 1961 (2000) (providing table of interest rates on fifty-two week Treasury bills as determined by United States Secretary of Treasury). That rate (and the fact that rates had increased thereafter) was readily ascertainable from published sources at the time the complaint was filed. *Id.* (Because the same interest rate was applicable to civil judgments in Federal courts, see Pub. L. 97-164, Title III, § 302[a][1], [2], 95 Stat. 25

or during trial. On June 16, 1999, the jury returned a special verdict finding damages in the amount of $700,000.

On June 24, 1999, the parties filed a stipulation that the MBTA had paid Claff $80,000 as a pro tanto payment back in December, 1993. Neither party submitted anything on the subject of what interest rate was to be applied. On July 7, 1999, judgment was entered for the plaintiff in the amount of $620,000 "with interest thereon from 2-14-96 in the sum of $252,552.32 as provided by law." It was apparent from the face of the judgment that the assistant clerk had made two errors in calculating that amount of interest. First, contrary to G. L. c. 79, § 37, the assistant clerk had calculated interest as accruing only from the date of the filing of the suit rather than from the date of the taking. Second, the clerk had calculated interest at the rate of twelve per cent per year rather than the rate set by G. L. c. 79, § 37, which, for a taking occurring in December, 1993, would have been 3.61 per cent per year. See note 2, *supra*. On August 4, 1999, the MBTA filed a notice of appeal from the judgment. Claff did not file notice of any cross appeal. The MBTA's appeal was never entered in the Appeals Court.

On July 28, 2000, Claff filed a motion to dismiss the MBTA's appeal and a motion for relief from judgment seeking to assess interest on the judgment at the rate of seven per cent per annum from the date of taking or, in the alternative, at the rate of 3.61 per cent set by G. L. c. 79, § 37. Claff's motion for relief was submitted as a motion pursuant to rule 60 (a) and (b) (6). The MBTA assented to that portion of Claff's motion seeking recalculation of the interest rate at 3.61 per cent per year from the date of the taking, but objected to Claff's attempt to impose an interest rate higher than that provided by statute.[3] On August 8, 2000, the judge denied Claff's request that the interest rate be increased to seven per cent, allowed Claff's alternative request that the statutory interest rate of 3.61 per

[1982], a table of those rates also appeared in Massachusetts Lawyers Diary and Manual.)

[3]The Massachusetts Bay Transportation Authority (MBTA) also confirmed that the miscalculation of the interest rate in the original judgment was the only issue it intended to raise on appeal, indicating that it would withdraw the appeal if that calculation were corrected.

cent be calculated running from the date of the taking,[4] and dismissed the MBTA's appeal as moot. An amended judgment, reflecting the recalculated interest, then entered. Claff appealed from that portion of the judge's order that denied its request for interest at the rate of seven per cent.

2. *Discussion.* The Appeals Court observed that the statutory interest rate does not necessarily equate to constitutionally adequate compensation in all eminent domain cases, but held that Claff had waived its claim for additional interest by failing to raise it in a timely manner. *M.B. Claff, Inc.* v. *Massachusetts Bay Transp. Auth.*, 59 Mass. App. Ct. 669, 673-674, 677-678 (2003). Specifically, the Appeals Court ruled that a claim for a higher rate of interest had to be raised prior to trial to give "adequate notice to the defendant that there will be a contest on the issue," and that, absent stipulation or resolution by way of motion for summary judgment, the interest claim would present an issue of fact to be determined by the fact finder at trial. *Id.* at 675-677. "[E]vidence of what that [reasonable] rate should be must be presented at trial as part of the plaintiff's proof of just compensation." *Id.* at 675. Where Claff had neither given prior notice of its intent to pursue this aspect of a claim for compensation nor presented any evidence on the issue at trial, the Appeals Court treated the claim as waived. *Id.* at 677-678.

While Claff (and the Attorney General as amicus curiae) protest that requiring a party to present an interest claim at trial is impractical and needlessly burdensome (there being no issue as to interest unless and until there is a determination that the owner is entitled to compensation above and beyond the pro tanto payment), the Appeals Court's analysis is conceptually sound. The basis for a court's award of an interest rate higher than that set by statute is the theory that interest is part of the "just compensation" to which the property owner is entitled, and the determination of what amount would be "just compensation" in a given case is therefore a factual issue to be decided

---

[4]Because the MBTA's appeal had not been entered in the Appeals Court, the judge still retained authority to rule on Claff's motion under Mass. R. Civ. P. 60 (a) and (b) (6), 365 Mass. 828 (1974). See J.W. Smith & H.B. Zobel, Rules Practice § 60.3, at 471 (1977 & Supp. 2004). See also *Commonwealth* v. *Cronk*, 396 Mass. 194, 197 (1985).

by a court, not an issue that can be conclusively decided by legislation. See *United States* v. *Blankinship*, 543 F.2d 1272, 1274-1275 (9th Cir. 1976). Thus, the issue of interest is simply part of the claim for "just compensation" that must be raised and proved by the property owner if the owner contends that a statutory interest rate fails to satisfy the constitutional requirement of "just compensation." Like any other claim, a claim that the statutory rate of interest is unconstitutional as applied to the plaintiff is one that needs to be proved, and a proper articulation in a timely pleading followed by proof at trial is the customary method for establishing a party's claim.

Relying on *Verrochi* v. *Commonwealth*, 394 Mass. 633 (1985), Claff contends that a constitutional challenge to the statutory interest rate may be raised after trial of an eminent domain damages case. During the pendency of the action in *Verrochi*, the Legislature had amended the statute to increase the interest rate applicable to takings of land from six per cent to ten per cent per year. *Id.* at 633-635. The issue on appeal was one of statutory interpretation, namely, whether the new, higher interest rate was to be applied retroactively to the date of taking, or whether that rate should only be applied as of the date of the statute's amendment. *Id.* at 635-636. The court did not rule on the issue as a constitutional claim, but considered constitutional arguments for the sole purpose of "proper construction of the legislative intent in enacting the . . . amendment." *Id.* at 635. Specifically, the court observed that the Legislature had increased the interest rate in response to numerous Federal court decisions holding that a fixed rate of six per cent (which had also been set by statute for Federal eminent domain cases) did not satisfy the constitutional requirement of just compensation. *Id.* at 639-641, and cases cited. That constitutional analysis, along with other indicia of the Legislature's intent, convinced the court that the amended statute was intended to have retroactive application. *Id.* at 641-642.

Claff correctly notes that the plaintiffs in *Verrochi* filed their motion seeking the higher interest rate after the jury returned a

verdict.[5] See *id.* at 635. See also *Salem Country Club, Inc.* v. *Peabody Redevelopment Auth.,* 21 Mass. App. Ct. 433, 437-438 (1986) (where *Verrochi* decision issued while defendant's appeal still pending, single justice properly allowed plaintiff to file late appeal challenging calculation of interest, noting that correct computation of statutory interest pursuant to *Verrochi* "was a ministerial act and properly a subject for relief in this court"). However, the issue whether the amendment increasing the interest rate should be interpreted to apply retroactively was a question of law, whereas Claff is contending that, on constitutional grounds, an interest rate higher than the one now provided by statute must be applied, a contention that raises a question of fact.[6]

We note that other jurisdictions have taken the position that claims concerning the proper rate of interest must be raised and proved at the trial determining just compensation for the taking. See, e.g., *United States* v. *100 Acres of Land,* 468 F.2d 1261, 1269-1270 (9th Cir. 1972), cert. denied, 414 U.S. 822, 864 (1973); *King* v. *State Rds. Comm'n,* 298 Md. 80, 93-94 (1983). However, we also note that challenges to statutory interest rates in eminent domain proceedings have been raised and resolved in various ways separate and apart from the trial on damages. See, e.g., *United States* v. *Blankinship,* 543 F.2d 1272, 1274 (9th Cir. 1976); *United States* v. *97.19 Acres,* 511 F. Supp. 565 (D. Md. 1981); *United States* v. *319.46 Acres of Land,* 508 F. Supp. 288 (W.D. Okla. 1981); *State* v. *Jim Lupient Oldsmobile Co.,* 509 N.W.2d 361, 362-363 (Minn. 1993); *Matter of the City of N.Y.,* 58 N.Y.2d 532, 535-536 (1983); *In re Washington Heights-Highbridge Park Community Development Area,* 82

---

[5]The same is true with respect to two other cases relied on by Claff, both of which raised the same issue and were decided the same day as *Verrochi* v. *Commonwealth,* 394 Mass. 633 (1985). See *Hargrove* v. *Minuteman Regional Vocational Tech. Sch. Dist.,* 394 Mass. 1010 (1985); *Holyhood Cemetery Ass'n* v. *Boston,* 394 Mass. 1011 (1985).

[6]Moreover, while Claff relies heavily on *Verrochi* as the paradigm for raising this issue posttrial, Claff did not follow the procedure used in that case. The plaintiffs in *Verrochi* immediately filed their motion with respect to the calculation of interest on the day the jury verdict was returned. *Id.* at 635. See *Holyhood Cemetery Ass'n* v. *Boston, supra* (same). Here, during the three weeks that elapsed between the jury's verdict and the entry of judgment, Claff raised no issue with respect to the calculation of interest.

Misc. 2d 557 (N.Y. Sup. 1975). See also *United States* v. *329.73 Acres of Land*, 695 F.2d 922, 925 (5th Cir. 1983) (suggesting that constitutional challenge to statutory interest rate could be raised by motion to amend judgment pursuant to Fed. R. Civ. P. 59 [e]). But see *Adventurers Whitestone Corp.* v. *City of N.Y.*, 65 N.Y.2d 83, 89-91, appeal dismissed, 474 U.S. 935 (1985) (owner could not pursue claim to higher interest in separate proceeding after final judgment in condemnation proceeding).

For purposes of resolving the present appeal, we find it unnecessary to specify precisely when and by what means a plaintiff must make a constitutionally based claim for an interest rate higher than that provided by G. L. c. 79, § 37. Assuming (without deciding) that Claff should be allowed to raise this issue for the first time posttrial, it could not be raised by way of a motion under either rule 60 (a) or rule 60 (b) (6).

Rule 60 (a) allows the court to correct "[c]lerical mistakes in judgments," on either its own initiative or on a party's motion, "at any time." However, Claff's motion contending that the interest rate set by § 37 was unconstitutional, and that a rate of seven per cent was necessary to satisfy the constitutional mandate of "reasonable" compensation, did not ask to correct a mere "[c]lerical mistake[]." It raised a substantive issue of disputed fact, not a simple arithmetical or computational error by the clerk. See *Roberts* v. *Worcester Redevelopment Auth.*, 53 Mass. App. Ct. 454, 459-460 (2001). While rule 60 (a) has been identified as an appropriate avenue of relief to correct errors in the calculation of interest, the errors at issue in those cases involved the clerk's adding interest to the judgment where no interest was awarded as a matter of law (see *Chapman* v. *University of Mass. Med. Ctr.*, 423 Mass. 584, 589 [1966]; *Worsnop* v. *Texaco, Inc.*, 386 Mass. 1005, 1006 [1982]; *Dinsdale* v. *Commonwealth*, 39 Mass. App. Ct. 926, 927-928 [1995]), or the clerk's failure to calculate and include obviously applicable statutory interest (see *O'Malley* v. *O'Malley*, 419 Mass. 377, 379-381 [1995]). Here, consistent with those cases, correction of the clerk's apparent error in failing to calculate interest under G. L. c. 79, § 37, was properly obtained by way of rule 60 (a). However, a rule 60 (a) motion is not an appropriate device to address substantive disputes concerning the award of

interest, see *Lopes* v. *Peabody*, 430 Mass. 305, 313-314 (1999), and a substantive claim that the statutory interest rate was confiscatory could not be resolved on a rule 60 (a) motion. *Roberts* v. *Worcester Redevelopment Auth., supra.*[7]

Claff alternatively styled its motion as a motion pursuant to rule 60 (b) (6), which allows the court to grant relief for "any other reason justifying relief from the operation of the judgment." Relief under that "catchall provision" is only to be awarded in "extraordinary circumstances." *Sahin* v. *Sahin*, 435 Mass. 396, 406 (2001), and cases cited. A judge does not abuse his discretion in denying rule 60 (b) (6) relief to a claimant advancing an entirely new legal argument that was apparently overlooked during the course of the litigation. See *Fox of Boylston St. Ltd. Partnership* v. *Mayor of Boston*, 418 Mass. 816, 819 (1994). See also *Freitas* v. *Freitas*, 26 Mass. App. Ct. 196, 197-199 (1988) (rule 60 [b] [6] could not be used to add claim for legal fees and costs to divorce judgment). Where Claff's rule 60 (b) (6) motion seeking additional interest identified no extraordinary circumstance justifying relief, the judge did not abuse his discretion in denying that motion.[8] See *United States* v. *329.73 Acres of Land*, 695 F.2d 922, 925-926 (5th Cir. 1983)

---

[7] When an error affecting the calculation of interest goes beyond a clerical error covered by rule 60 (a), relief may be obtained by way of motion pursuant to Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974). See *Shawmut Community Bank, N.A.* v. *Zagami*, 419 Mass. 220, 223 (1994); J.W. Smith & H.B. Zobel, Rules Practice § 59.15, at 454 (1977 & Supp. 2004). See also *United States* v. *329.73 Acres of Land*, 695 F.2d 922, 925 (5th Cir. 1983). However, a rule 59 (e) motion must be filed within ten days after the entry of judgment. Claff's motion, filed over one year after the entry of judgment, could not be entertained as a rule 59 (e) motion.

[8] A motion under rule 60 (b) (6) also must be filed "within a reasonable time." Although Claff's motion as filed did not articulate any reason for the protracted delay in its filing (almost thirteen months after entry of judgment), Claff now relies on the fact that the judgment as originally entered awarded an amount of interest that was acceptable and constitutionally adequate. By using a rate of twelve per cent a year but calculating interest only from the date the action was filed, the clerk fortuitously calculated an amount of interest that was in fact slightly higher than the interest figure that would result from using the seven per cent figure (now proposed by Claff) calculated from the date of the taking. Claff thus contends that it was under no obligation to seek relief until it realized the MBTA's appeal intended to challenge the clerk's obvious failure to calculate interest in accordance with G. L. c. 79, § 37. Because we are of the view that denial of the rule 60 (b) (6) motion on its merits would not constitute an abuse of discretion, we need not address whether Claff's

(claim for interest above statutory rate could not be raised by motion pursuant to Fed. R. Civ. P. 60 [b]).

Because Claff's rule 60 (a) motion was not an appropriate avenue to raise its claim that the G. L. c. 79, § 37, interest rate was unconstitutional as applied, and because the motion under rule 60 (b) articulated no extraordinary circumstance justifying relief, we need not address the merits of Claff's contention that the statutory rate was confiscatory.

*Judgment affirmed.*

justification for the delay in filing would qualify as "reasonable." We are, however, troubled by Claff's reliance on the theory that the clerk "did the right thing for the wrong reason," where the clerk's error was so obvious and the record contained no basis on which to do what Claff now claims was the "right thing."